# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAHER ACHAGZAI, et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>BROADCASTING BOARD )<br>OF GOVERNORS, )<br><br>Defendant. ) | Civil Action No.: 14-768 (RDM) |

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, by undersigned counsel, moves to dismiss the Amended Complaint in this action under Rule 12 or, in the alternative, moves for summary judgment under Rule 56. The grounds for this motion are set forth in the accompanying supporting memorandum. A proposed order is attached.

Respectfully submitted,

VINCENT H. COHEN, JR.
D.C. Bar # 471489
Acting United States Attorney for the District of Columbia

DANIEL F. VAN HORN
D.C. BAR # 924092
Civil Chief

By: _____/s/_____
JEREMY S. SIMON, D.C. BAR #447956
Assistant United States Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.simon@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TAHER ACHAGZAI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 14-768 (RDM) |
| | ) | |
| BROADCASTING BOARD | ) | |
| OF GOVERNORS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Pursuant to Local Civil Rule 7(h), Defendant submits this Statement of Material Facts Not in Genuine Dispute in support of Defendant's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.

### Mohammed Mohmand

1.     With respect to the Equal Employment Opportunity ("EEO") administrative process that preceded this lawsuit, Mohammed Mohmand first sought EEO counseling on October 11, 2012.  (Ex. 1 to McDay Decl., at bates-number 00144)

2.     The matters raised by Mr. Mohmand at the time he sought EEO counseling are reflected on the "Statement in Support of Complaint" dated April 19, 2012, that was attached to his formal complaint of discrimination filed on December 11, 2012.  (Ex. 1 to McDay Decl., at bates-number 0002 to 00014)

3.     The matters raised by Mr. Mohmand in his formal complaint of discrimination filed on December 11, 2012 are reflected on the "Statement in Support of Complaint" dated April 19, 2012, that was attached to that complaint.  (Ex. 1 to McDay Decl., at bates-number

0002 to 00014)

**Syed Shah**

4.      With respect to the EEO administrative process that preceded this lawsuit, Syed

Shah first sought EEO counseling on October 11, 2012.  (Ex. 3 to McDay Decl., at bates-number

0006)

5.      The matters raised by Mr. Shah at the time he sought EEO counseling are

reflected on the "Affidavit" dated April 19, 2012, that was attached to his formal complaint of

discrimination dated December 11, 2012.  (Ex. 3 to McDay Decl., at 00003, 00017-00022)

6.      The matters raised by Mr. Shah in his formal complaint of discrimination dated

December 11, 2012 are reflected on the "Affidavit" dated April 19, 2012, that was attached to

that complaint.  (Ex. 3 to McDay Decl., at 00003, 00017-00022)

**Tahir (Taher) Achagzai**

7.      With respect to the EEO administrative process that preceded this lawsuit, Tahir

(Taher) Achagzai first sought EEO counseling on October 11, 2012.  (Ex. 5 to McDay Decl., at

bates-number 145).

8.      The matters raised by Mr. Achagzai at the time he sought EEO counseling are

reflected on the "Affidavit" dated April 18, 2012, that was attached to his formal complaint of

discrimination dated December 8, 2012.  (Ex. 5 to McDay Decl., at bates-number 1-10)

9.      The matters raised by Mr. Achagzai in his formal complaint of discrimination

dated December 8, 2012 are reflected on the "Affidavit" dated April 18, 2012, that was attached

to that complaint.  (Ex. 5 to McDay Decl., at bates-number 1-10)

**Zeba Khadem**

10. With respect to the EEO administrative process that preceded this lawsuit, Zeba Khadem first sought EEO counseling on October 11, 2012. (Ex. 7 to McDay Decl., at bates-number 221)

11. The matters raised by Ms. Khadem at the time she sought EEO counseling are reflected on the "Affidavit" that was attached to her formal complaint of discrimination dated December 9, 2012. (Ex. 7 to McDay Decl., at bates-number 2-10)

12. The matters raised by Ms. Khadem in her formal complaint of discrimination dated December 9, 2012 are reflected on the "Affidavit" that was attached to that complaint. (Ex. 7 to McDay Decl., at bates-number 2-10)

**Naseem Stanazai**

13. With respect to the EEO administrative process that preceded this lawsuit, Nasseem Stanaza first sought EEO counseling on March 22, 2013. (Ex. 9 to McDay Decl., at bates-number 43)

14. The matters raised by Mr. Stanazai at the time he sought EEO counseling are reflected on the written attachment that was part of his formal complaint of discrimination that was filed on or about April 24, 2013. (Ex. 9 to McDay Decl., at bates-number 2-37)

15. The matters raised by Mr. Stanazai in his formal complaint of discrimination are reflected in the written attachment that is part of his formal complaint. (Ex. 9 to McDay Decl., at bates-number 2-37)

Respectfully submitted,

VINCENT H. COHEN, JR.
D.C. Bar # 471489
Acting United States Attorney for the District of
Columbia

DANIEL F. VAN HORN
D.C. BAR # 924092
Civil Chief

By: _____/s/_____
    JEREMY S. SIMON, D.C. BAR #447956
    Assistant United States Attorney
    555 4th Street, N.W.
    Washington, D.C. 20530
    (202) 252-2528
    Jeremy.simon@usdoj.gov

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TAHER ACHAGZAI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 14-768 (RDM) |
| | ) | |
| BROADCASTING BOARD | ) | |
| OF GOVERNORS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

This lawsuit has been brought by five individual plaintiffs, each of whom alleges that he or she experienced discrimination on the basis of national origin and also was retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended. Each plaintiff also alleges that he or she was discriminated against on the basis of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). The Amended Complaint ("Complaint") consists of nine counts, although several are repetitive and/or duplicative of other counts. As alleged in the Complaint, the counts are: (1) intentional discrimination based on national origin; (2) intentional discrimination based on age; (3) disparate impact discrimination based on national origin; (4) disparate impact discrimination based on age; (5) hostile work environment based on national origin and age; (6) "systemic harassment" based on national origin and age (which appears to be duplicative of Count V); (7) "willful discrimination" under Title VII and the ADEA (which appears to be duplicative of Counts I-II); (8) retaliation based on Title VII protected conduct; and (9) retaliation based on ADEA protected conduct.

The Complaint should be dismissed, or alternatively, summary judgment granted in favor of the Defendant for several reasons as set forth more fully below.

## FACTUAL BACKGROUND

Defendant incorporates herein its accompanying Local Rule 7(h) Statement of Material Facts Not in Dispute.

## ARGUMENT

### I.   Standard of Review

#### A.  Motion to Dismiss Pursuant to Rule 12(b)(1)

Defendant moves to dismiss the Complaint because Plaintiffs have failed to exhaust administrative remedies for their claims. *See* Fed. R. Civ. P. 12(b)(1).[1]  When reviewing a 12(b)(1) motion to dismiss, "the court must accept the complaint's well-pled factual allegations as true and draw all reasonable inference in the plaintiff's favor." *Thompson v. Capitol Police Bd.*, 120 F. Supp. 2d 78, 81 (D.D.C. 2001); *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999).  At the same time, "[t]he court is not required, however, to accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001), *aff'd*, 346 F.3d 192 (D.C. Cir. 2003).  Plaintiffs must carry the

---

[1]   Although it appears that this Court views the failure to exhaust administrative remedies as properly brought under Rule 12(b)(6) rather than Rule 12(b)(1), *Weng v. Solis*, 842 F. Supp. 2d 147, 155 (D.D.C. 2012), there exists some uncertainty on the issue within this Circuit. *Compare Adams v. U.S. Capitol Police Bd.*, 564 F. Supp. 2d 37, 40 (D.D.C. 2008) ("When a plaintiff fails to exhaust administrative remedies, dismissal under 12(b)(1) is appropriate." *and Mills v. Billington*, No. 04-2205 (HHK), 2006 WL 1371683, at *2 (D.D.C. May 16, 2006) ("It is well-settled that a plaintiff's failure to exhaust her administrative remedies will deprive a district court of subject matter jurisdiction[.]" *with Holmes v. PHI Serv. Co.*, 437 F. Supp. 2d. 110, 118-23 (D.D.C. 2006) (Walton, J.) (failure to timely exhaust is not a jurisdictional defect) *and Nichols v. Truscott*, 424 F. Supp. 2d 124, 132 (D.D.C. 2006) (same); *see also Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003) (recognizing that prior D.C. Circuit decisions have reached conflicting answers as to whether a failure to exhaust is jurisdictional, but declining to decide the matter).  However, much like in *Rann*, the question need not be resolved since dismissal is appropriate under either Rule 12(b)(1) or Rule 12(b)(6).

2

burden of establishing subject matter jurisdiction by a preponderance of evidence. *Thompson*, 120 F. Supp. 2d at 81; *Vanover*, 77 F. Supp. 2d at 98.  In determining whether jurisdiction exists, a court may look beyond the allegations of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the conflicting evidence. *See Herbert v. Nat'l Acad. Of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B.  Motion to Dismiss Pursuant to Rule 12(b)(6)

A Rule 12(b)(6) motion tests the sufficiency of a complaint.  In resolving a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court will treat the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Sullivan-Obst v. Powell, Sec'y. Dep't of State*, 300 F. Supp. 2d 85, 91 (D.D.C. 2004).  However, the complaint must appear plausible on its face and raise a reasonable expectation that discovery will produce supporting evidence. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In *Twombly*, the Court stated that while there was no "probability requirement at the pleading stage," *id*. at 556, to survive a Rule 12(b)(6) motion to dismiss, the facts alleged in the complaint must be sufficient "to state a claim for relief that is plausible on its face," *id*. at 570.  The Court referred to this newly clarified standard as the "plausibility standard." *Id*. at 560-61 (abandoning the "no set of facts" language from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) further clarified the plausibility pleading standard, explaining that it "demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Id*. at 678.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id*.

This standard applies equally in employment cases. *See e.g. Brookens v. Solis*, 635 F.

Supp. 2d 1, 4 n. 4 (D.D.C. 2009); *Nichols v. Truscott*, 424 F. Supp. 2d 124, 132 (D.D.C. 2006);

*Kassner v. Second Ave. Delicatessen, Inc.*, 496 F.3d 229, 240 (2d Cir. 2007); *EEOC v.*

*Concentra Health Servs., Inc.*, 496 F.3d 296, 307 (2d Cir. 2006). Therefore, it does not appear

that simply by asserting discrimination in a pleading, per *Sparrow v. United Air Lines, Inc.*, 216

F.3d 1111, 1113 (D.C. Cir. 2000), a plaintiff can survive a motion to dismiss a complaint of

employment discrimination. *See Kassem v. Washington Hosp. Ctr.*, 513 F.3d 251, 253-54 (D.C.

Cir. 2008) (citing *Sparrow* for standard of appellate review and *Twombly* for standard on motion

to dismiss); *Espinosa v. Donovan,* 2015 U.S. Dist. LEXIS 90360, at *9 (D.D.C. July 13, 2015)

("Yet, even at the motion to dismiss stage, a plaintiff must satisfy minimal standards for alleging

some material adverse employment action.")

On a motion to dismiss, under Rule 12(b)(6), the Court may consider, in addition to the

facts alleged in the complaint, documents either attached to, or incorporated into the complaint

by reference, as well as matters of which it may take judicial notice. *See E.E.O.C. v. St. Francis*

*Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997); *see also Lipton v. MCI*

*Worldcom, Inc.*, 135 F. Supp. 2d 182, 186 (D.D.C. 2001) ("[T]he court may consider the

defendant's supplementary material without converting the motion to dismiss into one for

summary judgment. This Court has held that 'where a document is referred to in the complaint

and is central to plaintiff's claims, such a document attached to the motion papers may be

considered without converting the motion to one for summary judgment.'").

### C. Motion for Summary Judgment

Summary judgment is appropriate when the record shows that there is no genuine issue as

to any material fact and that the moving party is entitled to judgment as a matter of law.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex v. Catrett*, 477 U.S. 317, 322

(1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must view all facts, and reasonable inferences to be drawn from them, in a light most favorable to the nonmoving party, in determining whether there exists a genuine issue of material fact. *Anderson*, 477 U.S. at 255. The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. Indeed, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative," summary judgment should be grated. *Id.* at 249-50 (citations omitted). Federal Rule of Civil Procedure 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Rather, when the movant files a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). The non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated assertions," "or by only a 'scintilla' of evidence," *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## II. Plaintiffs' Claims of Intentional Discrimination (Disparate Treatment) (Counts I and II) Should Be Dismissed.

### A. Plaintiffs Have Failed To Adequately Plead An Adverse Employment Action To Support A Claim Of Discrimination Under A Disparate Treatment Theory.

Counts I and II of the Complaint appear to assert claims of intentional discrimination under a disparate treatment theory of discrimination based on Plaintiffs' national origin and age. The basis of a disparate treatment theory is that an employee was allegedly treated differently by the employer because of the employee's "race, color, religion, sex, or [other protected

5

characteristic]." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003).  Liability in a disparate-treatment case "depends on whether the protected trait . . . actually motivated the employer's decision." *Id.*

Plaintiffs have the initial burden of establishing a *prima facie* case of discrimination under a disparate treatment theory, which necessitates first showing that they suffered an adverse employment action. *Chambers v. Sebelius*, 2013 U.S. Dist. LEXIS 181577, at *22 (D.D.C. Dec. 31, 2013), citing *Evans v. Sebelius*, 716 F.3d 617, 619 (D.C. Cir. 2013).   An "adverse employment action" is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Douglas v. Donovan,* 559 F.3d 549, 552 (D.C. Cir. 2009).

It is difficult to discern from the Complaint what, if any, adverse employment action forms the basis of the claim of disparate treatment for any of the Plaintiffs.   Plaintiffs each allege that they are International Broadcasters (GS-12) employed by Voice of America.  (Compl. ¶ 7)  They do not allege that they were removed from that position  to a lower grade or to a position with less pay or that they had formal supervisory duties that were removed.  Instead, they appear to allege only that they experienced a reduction in certain duties based on scheduling changes that occurred at various times during their employment and, based on those changes to the schedule, claim to have been "demoted".  (Compl. ¶¶ 35 (Stanazai), 49 (Khadem), 50 (unspecified "seniors"), 64 (Mohmand), and 107 ("Stanazai and "the other four senior complainants").   Those allegations appear to be the only allegations regarding conduct that could potentially constitute an adverse employment action to support a discrimination claim based on disparate treatment.

The Complaint, however, is unclear as to whether the reduction in duties was temporary or permanent and whether it otherwise was sufficient to constitute an adverse employment action.  For instance, a temporary assignment does not constitute an adverse employment action sufficient to support a claim of discrimination. *Peters v. District of Columbia,* 873 F. Supp. 2d 158, 206 (D.D.C. 2012); *Cf., Maramark v. Spellings,* 2007 U.S. App. LEXIS 22545, at *2 (D.C. Cir. Sept. 20, 2007) ("the denial of a five-month detail that might have allowed [plaintiff] to secure a permanent position at DOE, is too speculative to constitute an 'objectively tangible harm.").  As a general matter, even permanent reassignments are not adverse employment actions if they do not impact the employee's pay or benefits, reduce the employee's job responsibilities in a "materially adverse" way, or otherwise change the employee's responsibilities in a way that impacts negatively future employment opportunities. *See, e.g., Forkio v. Powell,* 306 F.3d 1127, 1131 (D.C. Cir. 2002); *see also Holcomb v. Powell*, 433 F.3d 889, 902-03 (D.C. Cir. 2006) (affirming the rule that dissatisfaction with a transfer was not actionable, but distinguishing that from a situation where a transfer resulted in a "reduction in responsibilities that persisted for years"); *Pardo-Kronemann v. Donovan,* 601 F.3d 599, 607 (D.C. Cir. 2010) (summary judgment not appropriate "'if a reasonable juror could find that the reassignment left the plaintiff with significantly diminished responsibilities'").

Plaintiffs have not alleged that the alleged reduction in duties was permanent and in what manner it impacted the terms and conditions of their employment.  To the contrary, the Complaint suggests that the schedules under which they worked were frequently shifting, suggesting that any changes were not permanent.  (Compl. ¶¶ 51, 53, 69, 78, 88, 89)  Accordingly, Plaintiffs have failed to plead facts sufficient under the *Iqbal* standard to state a claim that they suffered an adverse employment action on the basis of their age or national

origin. *See, e.g., Espinosa v. Donovan,* 2015 U.S. Dist. LEXIS 90360, at *10 (D.D.C. July 13,

2015) ("Here, the complaint fails to allege any facts that would support an inference that the

alleged lateral transfer denials constituted the type of adverse employment action required to

state a claim under Title VII."); *Major v. Plumbers Local Union No. 5,* 370 F. Supp. 2d 118, 129

(D.D.C. 2005) (dismissing claims that did not contain "specific factual allegations such as . . .

how a particular plaintiff was discriminated against by a particular defendant"). Thus, Counts I

and II should be dismissed.

> **B.    Counts I and II Should Be Dismissed To The Extent Plaintiffs Have Failed
> To Exhaust Administrative Remedies.**

The EEOC's regulations provide that "aggrieved" employees or applicants for

employment who allege they have been discriminated against must first consult an agency EEO

counselor before filing a complaint of discrimination and must do so within 45 days of the

"matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the

effective date of the action." 29 C.F.R. § 1614.105(a)(1). Exhaustion of administrative remedies

is a prerequisite to bringing suit in federal court. *Hill v. Kempthorne*, 577 F. Supp. 2d 58, 64

(D.D.C. 2008) ("A federal employee alleging retaliation in violation of Title VII must timely

exhaust his or her administrative remedies.") (collecting cases); *Williams v. Munoz*, 106 F. Supp.

2d 40, 42 (D.D.C. 2000) ("A timely administrative charge is a prerequisite to initiation of a Title

VII action."). Administrative exhaustion also is required for claims brought under the ADEA.

*See, e.g., Gilbert v. Napolitano*, 958 F. Supp. 2d 9, 12 (D.D.C. 2013); *Nguyen v. Mabus*, 895 F.

Supp. 2d 158, 171 (D.D.C 2012); *Johnson v. District of Columbia*, 572 F. Supp. 2d 94, 102

(D.D.C. 2008); *Washington v. Washington Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C.

Cir. 1998); *but see Rann v. Chao,* 346 F.3d 192, 196 (D.C. Cir. 2003) (noting some diverging

authority as to when exhaustion is required under the ADEA but not reaching the issue).

8

As the Supreme Court stated in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), "'strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" *Id.* at 108 (*quoting Mohasco Corp. v. Silver*, 447 U.S. 807, 825 (1980)).  Each discrete claim of discrimination, moreover, must be separately exhausted.  *Terveer v. Billington*, 34 F. Supp. 3d 100, 112 (D.D.C. 2014) ("Since *Morgan*, courts in the District of Columbia Circuit have largely refused to take jurisdiction over unexhausted claims of discrete discriminatory acts, such as terminations that occur following the filing of an administrative charge.").

Most of the conduct alleged in the Complaint pertains to the period from 2010 to the middle of August 2012.  (Compl. ¶¶ 21, 35, 38, 53, 68, 79, 81, 94).  As discussed below, all of that conduct occurred over 45 days before any of the Plaintiffs contacted an EEO counselor about their claims of discrimination.  Moreover, as discussed below, the Plaintiffs did not timely raise any conduct with an EEO counselor that could constitute an actionable adverse employment action to support a disparate treatment claim.  Any claims raised in the Complaint that were not timely raised during the EEO administrative process should be dismissed for failure to exhaust administrative remedies.

1.    **Tahir Achagzai:** Mr. Achagzai first consulted an EEO counselor on October 11, 2012.  (SOF ¶ 1)  On December 11, 2012, he filed a formal EEO complaint, attaching an affidavit dated April 18, 2012, that asserted the factual bases for his complaint.  (SOF ¶¶ 1-3). All allegations contained in Mr. Achagzai's affidavit therefore necessarily occurred on or before April 18, 2012, nearly six months before he consulted an EEO counselor.  Mr. Achagzai's formal EEO complaint could not, and did not, allege any facts that occurred within 45 days of his consulting with an EEO counselor on October 11, 2012.  Accordingly, Mr. Achagzai failed to

timely raise any discrete act that could form the basis for a claim of discrimination under a disparate treatment theory.  Mr. Achgazai's claims under Counts I and II therefore should be dismissed.

      2.    **Syed Shah:**  Mr. Shah first consulted an EEO counselor on October 11, 2012.  (SOF ¶ 4)  On December 11, 2012, he filed a formal EEO complaint, attaching an affidavit dated April 19, 2012, that asserted the factual bases for his complaint.   (SOF ¶¶ 4-6)  All allegations contained in Mr. Shah's affidavit therefore necessarily occurred on or before April 19, 2012, nearly six months before he consulted an EEO counselor.  While Mr. Shah's formal EEO complaint contained a conclusory allegation of reprisal between the years 2010 and 2012, he did not allege any facts in his EEO complaint that occurred within 45 days of consulting with an EEO counselor on October 11, 2012.   An allegation of "reprisal" moreover, is a distinct claim from an allegation of discrimination based on age and/or national origin.  (Defendant addresses the claims of retaliation in Section VI below).  Accordingly, Mr. Shah's claims under Counts I and II should be dismissed.

      3.    **Mohammed Zamen Mohmand**:  Mr. Mohmand first consulted an EEO counselor on October 11, 2012.  (SOF ¶ 7)  On December 11, 2012, he filed a formal EEO complaint, attaching an affidavit dated April 19, 2012, that asserted the factual bases for his complaint.  (SOF ¶¶ 7-9).  All allegations contained in Mr. Mohmand's affidavit therefore necessarily occurred on or before April 19, 2012, nearly six months before he consulted an EEO counselor.  Mr. Mohmand's formal EEO complaint could not, and did not, allege any facts that occurred within 45 days of his consulting with an EEO counselor on October 11, 2012.  Mr. Mohmand's claims under Counts I and II therefore should be dismissed.

      4.    **Zeba Khadem**:  Ms. Khadem first consulted an EEO counselor on October 11,

2012.  (SOF ¶ 10)  On December 11, 2012, she filed a formal EEO complaint, attaching an undated affidavit that asserted the factual bases for her complaint.   Although undated, the acts on which she bases her claim of disparate treatment all occurred prior to April 2012.  (Ex. 7 to McDay Decl. at bates-number 2-10)   Thus, she did not allege any facts in her affidavit as a basis for her claim of disparate treatment that occurred within 45 days of consulting with an EEO counselor on October 11, 2012.   Accordingly, Ms. Khadem's claims of disparate treatment under Counts I and II should be dismissed.

5.    **Naseem Stanazai:**  Mr. Stanazai first consulted an EEO counselor on March 22, 2013.  (SOF ¶ 13)  On April 24, 2013, he filed a formal EEO complaint, attaching an undated affidavit that asserted the factual bases for his complaint.   Under the section of that affidavit pertaining to his claims of disparate treatment, Mr. Stanazai alleged only that his assignments were changed and his duties removed at certain times, but not on a permanent basis.  (Ex. 9 to McDay Decl. at bates-number 8-12)   Thus, he did not identify any conduct that occurred within 45 days of his filing of the EEO complaint and that could constitute an adverse employment action sufficient to support a claim of discrimination under a disparate treatment theory. Accordingly, Mr. Stanazai's claims of disparate treatment under Counts I and II should be dismissed.

## III.    Plaintiffs' Claims of Disparate Impact (Counts III and IV) Should be Dismissed.

Plaintiffs also assert claims of disparate impact discrimination under Title VII and the ADEA (Counts III and IV) due to national origin and age.  These claims are based on assertions that "[Voices of America]'s managers adopted and maintained and implemented uniform employment practices that have a disparate impact on senior employees from Afghanistan." (Compl. ¶¶ 142, 148) (Counts III and IV, respectively)).

A disparate impact claim is distinct from a disparate treatment claim in that disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Raytheon*, 540 U.S. at 52 (2003).  Under a disparate impact theory, a facially neutral employment practice can be found to be discriminatory without the intent required under a disparate treatment theory.  *Id.* (citing *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 644-45 (1989).  Instead, the theory permits "an inference of discrimination" if "an observed disparity is the systemic result of a specific employment practice that cannot be justified as necessary to the employer's business." *Segar v. Smith*, 738 F.2d 1249, 1267 (D.C. Cir. 1984).  To establish a disparate impact claim, "the plaintiff class must present evidence that the practices have a disproportionately adverse effect on the plaintiffs." *Id.*

First, Plaintiffs have failed to exhaust their administrative remedies with respect to claims of disparate impact.  It is well settled that employees must not only identify the conduct on which their claims are based, but also the theory of discrimination (gender, race, etc.) to properly exhaust administrative remedies. *Oliver v. Napolitano,* 729 F. Supp. 2d 291, 298 (D.D.C. 2010) ("'[t]he theories of discrimination in a plaintiff's lawsuit are limited to those theories contained in the EEOC Charge [she] filed'"), *aff'd,* 2011 U.S. App. LEXIS 24461, at * (D.C. Cir. Dec. 8, 2011) ("The district court properly denied appellant's motion to amend her complaint, because appellant had not exhausted administrative remedies for the gender discrimination claim she sought to add."); *see also Hopkins v. Whipple*, 630 F. Supp. 2d 33, 41 (D.D.C. 2009) (dismissing the Plaintiff's disparate impact complaint on the grounds that there was no discussion of a disparate impact claim in the administrative counselor's report).

Similarly here, Plaintiffs Achagzai, Shah, Mohmand, Khadem, and Stanazai all failed to

raise in their administrative complaint any claim of discrimination based on a disparate impact theory. (Ex. ¶¶ 1, 3, 5, 7, 9 to McDay Decl.)  To the contrary, their claims were all based on a theory of intentional discrimination.  Accordingly, Plaintiffs' claims of disparate impact discrimination (Counts III and IV) should be dismissed.

Second, Plaintiffs have also failed to adequately plead any claims of disparate impact. Plaintiffs allege that "VOA management relied on the policy of what they have called the "New Format' to harass and force the seniors into retirement," and that "[a]s a direct result of the New Format, there was a disparate impact on the Senior staff of the language services." (Compl. ¶ 18; *see also* Compl. ¶¶ 45, 114, 142, 143, 148, 149.)   As a threshold matter, Plaintiffs conflate a disparate treatment theory with a disparate impact theory.   Plaintiffs are not alleging that a facially neutral policy has resulted in a disparate impact, but rather that management has intentionally used a policy to "harass and force the seniors into retirement."

Moreover, Plaintiff has failed to establish a *prima facie* case of unlawful disparate impact.  A *prima facie* case is established by identifying the challenged employment practice, showing its disparate impact on a protected group, and demonstrating a causal link between the employment practice and the disparate impact.  *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 656 (1989).  At the pleading stage, a "plaintiff is not required to prove that the employment practice caused a disparate impact . . . , but only needs to make allegations that state a 'cognizable claim.'" *Young v. Covington & Burling LLP*, 736 F. Supp. 2d 151, 161 (D.D.C. 2010).  To make out a cognizable claim, a plaintiff must, at a minimum, allege some "observed statistical disparit[y]" and identify the specific, facially neutral employment practice that is allegedly responsible for that disparity.  *See Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988).  Plaintiff's allegations must be sufficient to make out a plausible claim that the

13

alleged disparity is attributable to the identified practice and that the circumstances are such that

a statistical analysis could potentially demonstrate the required causal connection between the

disparity and the challenged practice. *See id.* at 994-97; *Twombly*, 550 U.S. at 555-58, 570

(while there is no "probability requirement at the pleading stage . . ., something beyond ... mere

possibility ... must be alleged" and the allegations "must be enough to raise a right to relief above

the speculative level," and "state a claim for relief that is plausible on its face").  Plaintiffs have

failed to meet this standard and their disparate impact claims (Counts III and IV) should be

dismissed for this additional reason.

## IV.    Plaintiffs' Hostile Work Environment Claim (Counts V-VI) Should be Dismissed.

Count V of the Complaint alleges that Plaintiffs were each subject to a hostile work

environment based on their national origin and age.  Count VI of the Complaint, styled "systemic

harassment", appears to assert the same claim.   Thus, Plaintiffs' hostile work environment claim

appears to be comprised within Counts V-VI.[2]

A hostile work environment exists only "[w]hen the workplace is permeated with

discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment." *Harris v.

Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotations and citations omitted); *see Brantley v.

Kempthorne*, 2008 U.S. Dist. LEXIS 38406, at *26 ("[A] hostile work environment claim must

---

[2]     To the extent Plaintiffs attempt to assert a distinct claim of "systemic" or "pattern or
practice" discrimination, those claims should be dismissed.   This is not a class action lawsuit but
an action in which five Plaintiffs with individual claims of discrimination have decided to join
their claims in a single lawsuit.  And, outside the class action context, there is no distinct claim
of "pattern or practice" or "systemic" discrimination. *See, e.g., Haynie v. Veneman,* 272 F. Supp.
2d 10, 17 n.4 (D.D.C. 2003) ("Although plaintiff alleges that defendant engaged in a 'pattern of
racial discrimination . . . directed at Philip Haynie and members of his family,' . . . this is not the
type of claim intended by the Court's reference to 'pattern-and-practice' claims.  Rather, the
Court's reference likely refers only to allegations of systemic discrimination against a protected
class of individuals where the alleged acts reflect an intent to discriminate against all persons in
the class.").

be based on incidents comprising one unlawful employment practice of intimidation, insult and ridicule that pervades plaintiff's day-to-day working life."). In determining whether a hostile work environment exists, courts must "look at the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Smith*, 539 F. Supp. 2d at 137. There is both an objective and subjective component to the analysis. The conduct must be "severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive –" and Plaintiff must have subjectively perceived the environment as intolerable or Defendant's conduct cannot be said to have altered the conditions of her employment, *Harris,* 510 U.S. at 21-22.

Courts consistently apply this demanding hostile work environment standard "to ensure that Title VII does not become a general civility code," and to "filter out complaints attacking the ordinary tribulations of the workplace." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "Even a few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002). Essentially, a viable hostile work environment claim requires that the challenged conduct "be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788; *see also Brooks v. Grundmann,*748, F.3d 1273, 1277 (D.C. Cir. 2014) (plaintiff failed to establish a hostile work environment based on allegations showing that "her superiors and colleague may have been tactless and ill-mannered"); *Kampmier v. Emeritus Corp.,* 472 F.3d 930, 941 (7th Cir. 2007) (distinguishing "between harassing and merely objectionable conduct").

15

A.    **Plaintiffs' Hostile Work Environment Claims Should Be Dismissed For Failure To Timely Raise Them During The Administrative Process.**

The requirement to exhaust administrative remedies applies to hostile work environment claims, including the requirement to raise the claim with an EEO counselor within 45 days. Where all of the conduct that forms the basis of the claim falls outside the 45-day period, the hostile work environment claim is barred. *Ricci v. Kerry,* 2013 U.S. Dist. LEXIS 135459, at *9 (D.D.C. Sept. 23, 2013).   As discussed above, of the five Plaintiffs, four failed to identify any acts in the written statement accompanying their complaint of discrimination that occurred within 45 days of their EEO contact.   Accordingly, the hostile work environment claims of those Plaintiffs are time-barred.

The fifth Plaintiff (Mr. Stanazai) alleged one act that occurred within 45 days of his EEO contact, specifically, a change in the work schedule that occurred in February 2013.  (Ex. 9 to McDay Decl., at bates-number 0027).  However, a change in an employee's work schedule is not the type of conduct that could give rise to a hostile work environment but instead is in the nature of a non-actionable ordinary tribulation of the workplace.   That one act, moreover, cannot be said to be "connected" to the conduct falling outside the 45-day period so as to be part of a single unlawful employment practice. *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011); *Burkes v. Holder*, 953 F. Supp. 2d 167, 177-78 (D.D.C. 2013) (limiting race-based hostile work environment claim only to related conduct).   As such, that one act cannot make timely the alleged conduct that occurred outside the 45-day period and which is unconnected to the one timely-raised act.

B.    **Plaintiffs Have Not Alleged Severe or Pervasive Conduct Sufficient To State A Hostile Work Environment Claim.**

Plaintiffs' hostile work environment claim also should be dismissed because Plaintiffs

have not pled severe or pervasive conduct sufficient to meet the exacting standard for such a

claim.   Instead, as reflected in the written statements submitted with their EEO complaints, the

type of conduct they allege (unfavorable emails, busy work assignments, allegedly disagreeable

managers, etc.) is precisely the type of conduct that Courts have found insufficient to state a

claim.   *See, e.g., Allen v. Napolitano,* 774 F. Supp. 2d 186, 205 (D.D.C. 2011) (plaintiff's

"claims that she was excluded from meetings, received unreasonable deadlines, denied training

opportunities, and assigned busy work assignments" were not sufficient to state a hostile work

environment claim); *Hutchinson v. Holder,* 815 F. Supp. 2d 303, 322 (D.D.C. 2011) ("Allegedly

insulting emails sent over a period of years 'are the sort of isolated acts that courts have

consistently rejected as the basis for Title VII claims'" as are "negative performance reviews —

even if inaccurate" – because '[c]riticisms of a subordinate's work and expressions of

disapproval (even loud expressions of disapproval) are the kinds of normal strains that can occur

in any office setting . . . . [T]hey do not demonstrate a work environment that was pervaded by

discrimination.'")

Although the Complaint in this action lists a litany of items Plaintiffs presumably will

identify as support for their hostile work environment claim (Compl. ¶ 14), the Complaint does

not allege which of the Plaintiffs, if any, were subjected to the stated conduct or when the

conduct occurred.   Instead, information specific to each Plaintiff is reflected in the written

statements that each Plaintiff submitted with his or her EEO complaint during the administrative

process.   Under a hostile work environment theory, the conduct must not only be objectively

hostile but also must have been subjectively perceived to be hostile by the individual employee

at the time in question. *Hutchinson,* 815 F. Supp. 2d at 321.   Thus, Plaintiffs' hostile work

environment claims are necessarily framed by the conduct that they identified during the

administrative process as the basis for that claim, which is a contemporaneous reflection of the conduct that they viewed to be hostile at that time.   A review of those submissions establishes that the conduct about which they complained during the EEO administrative process – which amounts to ordinary tribulations in the workplace and was spread out over several years – is not sufficient to state a hostile work environment claim. *See, e.g., Nurridin v. Bolden,* 674 F. Supp. 2d 64, 94 (D.D.C. 2009) ("[T]he alleged events are temporally diffuse, spread out over a four-year period, suggesting a lack of pervasiveness"); *Hopkins v. Baltimore Gas & Elec. Co.,* 77 F.3d 745, 754 (4th Cir. 1996) ("Accordingly, we hold in this case that as a matter of law the conduct of which Hopkins complains, spread over seven years with significant time gaps between incidents, does not create a sufficiently hostile environment on which to rest a Title VII claim.").

## V.     Plaintiffs' Claim Of "Willful" Discrimination" (Count VII) Is Not An Independently Actionable Claim.

Count VII of the Complaint purports to assert a claim of "willful" discrimination.   Such a claim, however, is merely repetitive of Plaintiffs' claims of intentional discrimination (disparate treatment) in Counts I-II.   Moreover, although the ADEA permits liquidated damages upon a showing of "willfulness," that is not a separate claim but a standard of proof that can impact the amount of damages that might be recoverable under that statute.   *TWA v. Thurston,* 469 U.S. 111, 125 (1985).   Because liquidated damages are in the nature of a penalty under the ADEA, *id.,* they are not recoverable against the federal government.[3]   *McGaffney v. Donahoe,* 2015 U.S. Dist. LEXIS 97490, at *5 (S.D. Ind. July 17, 2014).   For these reasons, Count VII should be dismissed.

---

[3]     Plaintiffs' claim for punitive damages against the federal government (Compl. at 47) also should be dismissed for this reason.

18

**VI.     Plaintiffs' Claims of Retaliation (Counts VIII and IX) Should Be Dismissed.**

In Counts VIII and IX of the Complaint, Plaintiffs assert a claim of retaliation under a disparate treatment (as opposed to hostile work environment) theory.   Accordingly, as with the claims of discrimination asserted in Counts I-II of the Complaint, Plaintiffs must separately exhaust each discrete act of retaliation on which they base their claim.   *Rattigan v. Gonzalez*, 503 F. Supp. 2d 56, 59 (D.D.C. 2007) (citing *Morgan*, 536 U.S. at 114).   For reasons already addressed in the discussion regarding Counts I-II of the Complaint, Plaintiffs failed to timely raise any claim of retaliation during the EEO process.   In addition, Plaintiffs claim retaliation "through 2014" but they cannot bootstrap later claims that post-date the EEO process onto claims raised during the EEO process that concluded in 2012 for most plaintiffs and allegedly in 2013 for Mr. Stanazai.   *Terveer v. Billington*, 34 F. Supp. 3d 100, 112 (D.D.C. 2014)  ("Since *Morgan*, courts in the District of Columbia Circuit have largely refused to take jurisdiction over unexhausted claims of discrete discriminatory acts, such as terminations that occur following the filing of an administrative charge.").   Accordingly, any claims that post-date Plaintiffs' formal EEO complaints should be dismissed.

Plaintiffs also fail to allege that each of them engaged in acts of protected conduct that preceded the conduct that they are challenging.  Because Plaintiffs did not seek EEO counseling until October 2012 or, in the case of Mr. Stanazai, March 2013, they only can assert a retaliation claim for employment decisions before that date if they individually engaged in conduct that falls within the "opposition" clause of Title VII and have adequately pled that any alleged acts of "opposition" were the cause of the conduct that they.   *Jones v. Walsh,* 668 F. Supp. 2d 53, 59 (D.D.C. 2009).

Title VII's opposition clause makes it unlawful "for an employer to discriminate against

any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." *George v. Leavitt*, 407 F.3d 405, 417 (D.C. Cir. 2005). To fall within this standard, an employee must oppose a "practice" made unlawful by Title VII, and also must demonstrate "a good faith, reasonable belief" that the challenged "practice" violates Title VII. *Id.* When the challenged "practice" is an alleged hostile work environment, the act of opposition must pertain to conduct that, objectively, is sufficiently severe and pervasive as to constitute a hostile work environment. *Id.*

Each Plaintiff must engage in protected conduct in his or her own right and the Plaintiffs collectively cannot rely on any acts of protected conduct by one Plaintiff to support their individual claims. As to most Plaintiffs, the type of conduct described in the Complaint does not constitute protected conduct under the "opposition clause." While the Complaint alleges that Mr. Stanazai complained about hiring practices in August 2012 (Compl. ¶ 28) – conduct which could constitute protected conduct under the opposition clause – that alleged complaint by Mr. Stanazai post-dates most of the conduct that he alleges to be retaliatory. And, the conduct that he identified in his administrative complaint as occurring after August 2012 consists of one instance in which a schedule was changed in February 2013, which does not constitute an actionable materially adverse action.

To establish an actionable event for a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry Co. v. White,* 548 U.S. 53, 68 (2006). An action is materially adverse when "it well might dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.*

However, "'not everything that makes an employee unhappy is an actionable adverse

20

action.'" *Bridgeforth v. Jewell,* 721 F.3d 661, 663 (D.C. Cir. 2013).  An employment-related

action challenged as retaliatory instead must "result in materially adverse consequences affecting

the terms, conditions, or privileges of the plaintiff's employment." *Pardo-Kronemann v.*

*Donovan,* 601 F.3d 599, 607 (D.C. Cir. 2010).

Some employment actions – such as failure to hire or promote – are "conclusively

presumed to be adverse employment actions." *Douglas v. Donovan,* 559 F.3d 549, 553 (D.C.

Cir. 2009).  However, "[f]or employment actions that do not obviously result in a significant

change in employment status . . . [,] an employee must go the further step of demonstrating how

the decision nonetheless caused . . . an objectively tangible harm." *Id.* This additional step

"requires [the Court] to consider whether the alleged harm is unduly speculative." *Id.*

The requirement that conduct be materially adverse is intended to separate significant

harms from trivial harms, such as petty slights or minor annoyances that often take place at work

and that all employees experience, and which do not rise to the level of being materially adverse.

*Burlington,* 548 U.S. at 67-69.  "A tangible employment action in most cases inflicts *direct*

economic harm." *Douglas,* 559 F.3d at 552.  While a "plaintiff alleging retaliation may rely on

more subtle actions to make his case," the plaintiff still must establish materially adverse harm

that is not "'unduly speculative.'" *Bridgeforth,* 721 F.3d at 663 (quoting *Douglas,* 559 F.3d at

553).

Plaintiffs identify the acts of retaliation at issue in paragraph 201 of the Complaint.

Among other things, Plaintiffs contend that they were retaliated against when management did

"whatever they want regardless of the law" and management telling "senior staff not [to] write

work related e-mails." (Compl. ¶ 201)  Such vague assertions are not sufficient to plead a claim

of individual acts of retaliation under Title VII or the ADEA.   For all of these reasons, Counts

VIII and IX should be dismissed.

### III.   CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss the

Complaint, or in the alternative, grant summary judgment.  A proposed order is attached.

August 6, 2015                              Respectfully submitted,


                                            VINCENT H. COHEN JR., D.C. Bar #471489
                                            United States Attorney for the District of Columbia

                                            DANIEL F. VAN HORN, D.C. Bar #924092
                                            Chief, Civil Division
                                            Assistant United States Attorney

                        By:      _____/s/_____
                                            JEREMY S. SIMON, D.C. Bar #447956
                                            Assistant United States Attorney
                                            Civil Division
                                            555 Fourth Street, N.W.
                                            Washington, D.C. 20530
                                            (202) 252-2528
                                            Jeremy.Simon@usdoj.gov