**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TAHER ACHAGZAI, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BROADCASTING BOARD OF GOVERNORS, <br><br> Defendant. | Civil Action No. 14-768 (RDM) |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiffs' Motion for a Preliminary Injunction. Dkt. 41. The underlying lawsuit alleges that Defendant Broadcasting Board of Governors ("Board") has engaged over the course of several years in systematic discrimination on the basis of age and nationality against five longstanding employees. All of the Plaintiffs are at least 60 years old, have been employed by the Board's Voice of America ("VOA") broadcasting service for between 14 and 33 years, and are naturalized United States citizens of Afghani descent. All work in VOA's South Asia Division, Afghan Division ("Pashto Service") as international broadcasters, although they serve in different capacities. Among other things, they allege that the current editing manager of the Pashto Service, Mohammad Ibrahim Nasar, has created schedules that devalue senior staff and replace them with junior employees, demoted senior staff to less desirable assignments, and failed to provide senior staff with adequate training for their new roles. The Board has moved to dismiss the complaint, or, in the alternative, for summary judgment, arguing that Plaintiffs failed to timely exhaust their administrative remedies and that the amended complaint fails to state a claim upon which relief can be granted.

After the Board's motion was fully briefed, Plaintiffs filed the present motion, which seeks a preliminary injunction blocking implementation of recent schedule changes affecting two of the five Plaintiffs: Mohammad Mohmand and Zeba Khadem.[1]  In particular, Mohmand objects to his assignment to do production work four days a week, and Khadem objects to Ibrahim Nasar's failure to assign her to a talk show.  They contend that the present schedule was adopted in retaliation for their complaint and that they will suffer irreparable injury unless the Court grants temporary relief.  The Board opposes Plaintiffs' motion, challenging both the merits of Plaintiffs' retaliation claim and the need for preliminary relief.

As explained below, the Court concludes that Plaintiffs have failed to meet their substantial burden of demonstrating that a preliminary injunction is warranted.  Plaintiffs' motion is, accordingly, **DENIED**.

## I.  BACKGROUND

Plaintiffs Mohmmed Mohmand and Zeba Khadem are longtime employees of Voice of America, a government-operated broadcasting service governed by the Board.  Mohmand is 68 years old, and Khadem is 64.  Dkt. 25 at 3–4 (Am. Compl. ¶ 8).  Both are naturalized U.S. citizens of Afghani descent who have worked at VOA for more than 30 years.  *Id.* (Am. Compl. ¶¶ 6–8).  Along with three of their co-workers, Mohmand and Khadem filed a lengthy complaint in this Court in May 2014, asserting 18 counts and covering over 200 pages and 800 numbered paragraphs.  *See* Dkt. 1.  On the Board's motion, the Court dismissed nine of those counts for failure to exhaust administrative remedies under the Federal Tort Claims Act and struck the remainder of the complaint for failure to comply with Federal Rules of Civil Procedure 8 and

---

[1]  At oral argument on February 4, 2016, Plaintiffs also sought relief for Taher Achagzai, a third Plaintiff.  Because Plaintiff's opening brief contains no argument or support for extending any relief to Achagzai, *see* Dkt. 41, the Court will limit its analysis to Mohmand and Khadem.

2

12(f), which require that a complaint set forth "a short and plain statement of the claim." *See* Dkt. 24. The five plaintiffs then filed an amended complaint that pared their claims in half, now asserting nine counts alleging workplace discrimination on the basis of their nationality, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and on the basis of their age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*. *See* Dkt. 25. Plaintiffs' claims allege discrete acts of discrimination, the creation of a hostile work environment, and retaliation based on Plaintiffs' complaints regarding these work conditions. *Id.*

The amended complaint includes a litany of allegations of purportedly discriminatory conduct, including "creating unfair and biased schedules," "removing Plaintiffs from positions [as] shift editor[s]," "taking away their shows," "assigning them tasks for which they ha[ve] not been trained," refusing "to provide them with adequate training," and "treating younger staff more favorably." Dkt. 25 at 5–6 (Am. Compl. ¶ 14). According to Plaintiffs, these acts created a hostile workplace and were intended to pressure Plaintiffs to resign. *Id.* at 7 (Am. Compl. ¶ 17).

After Plaintiffs filed their amended complaint, the Board moved to dismiss, or, in the alternative, for summary judgment. Dkt. 30. That motion posits that Plaintiffs waited too long to initiate the administrative Equal Employment Opportunity ("EEO") process and that, in any event, the amended complaint fails to state a claim upon which relief may be granted. *Id.* After the Board's motion was fully briefed, Plaintiffs filed the present motion for a preliminary injunction, seeking an order prohibiting the Board from implementing—or, more accurately, from continuing to implement—changes to Mohmand and Khadem's schedules. *See* Dkt. 41. According to Plaintiffs, the new schedule assigns Mohmand to production duties four days a week, which constitutes a demotion from his prior role as "shift editor." Dkt. 43 at 2. Plaintiffs

further contend that Mohmand has not been trained to perform production duties and that his new assignment is causing him anxiety and will otherwise damage his health, his reputation, and the quality of shows that he is forced to produce. *Id.* at 4–6.  With respect to Khadem's schedule, Plaintiffs contend that the new schedule deprives her of a talk show and "[s]ilenc[es] her voice on the air as a form of retaliation for her complaint."  Dkt. 41 at 4.  Although Plaintiffs conceded at oral argument that Khadem has not had her own talk show since 2010, they nonetheless contend that if her talk show is kept "off the air for an even longer period of time, she will lose her audience," "her contacts, and "her sources as well as the trust that her sources have in her as a Voice of America journalist," Dkt. 43 at 5.  As reflected in the schedule submitted by both parties, although not given a talk show, Khadem is scheduled to broadcast the news several times a week.  Dkt. 41-2 at 7–8.

      The Court convened a status conference and argument shortly after Plaintiffs moved for a preliminary injunction.  At that conference, Plaintiffs represented that the new schedule was already in effect.  In response to a question from the Court, moreover, Plaintiffs declined an evidentiary hearing on the motion, opting instead simply to file a reply.  After discussing the need for the movant to make a specific showing of irreparable harm supported by the evidence, the Court offered Plaintiffs the opportunity to make a supplemental filing and offered the Board an opportunity to do so as well.  In response, Plaintiffs filed a reply supported by additional declarations, *see* Dkt. 43, and the Board filed a supplemental memorandum in opposition to Plaintiffs' motion for preliminary injunction, *see* Dkt. 44.  Following submission of these materials, the Court afforded the parties an opportunity for further argument on Plaintiffs' motion for a preliminary injunction, Dkt. 41, along with argument on the Board's pending motion to dismiss or, in the alternative, for summary judgment, Dkt. 30.  At that hearing, the

Court indicated that it would deny Plaintiffs' motion for a preliminary injunction and that the instant opinion would be forthcoming.

## II. DISCUSSION

"A preliminary injunction is an extraordinary remedy that should be granted only when the party seeking the relief, by a clear showing, carries the burden of persuasion." *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004). To prevail, a party seeking a preliminary injunction must show (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Before *Winter*, courts in this Circuit evaluated these factors on a "sliding scale." *Davenport v. Int'l Bhd. of Teamsters*, 166 F.3d 356, 360–61 (D.C. Cir. 1999). Under that approach, a strong showing on one factor could compensate for a weak showing on another. *Id.* Thus, for example, "a very strong showing of irreparable harm" and a showing that "there is no substantial harm to the non-movant" might permit an injunction even upon "a correspondingly" less substantial showing of a "likelihood of success" on the merits. *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1292 (D.C. Cir. 2009). Or, "[a]lternatively, if substantial harm to the nonmovant is very high and the showing of irreparable harm to the movant very low, the movant must demonstrate a much greater likelihood of success." *Id.*

In *Winter*, the Supreme Court rejected a rule applied in the Ninth Circuit that permitted a movant to obtain a preliminary injunction based on a mere "possibility of irreparable harm," as long as the movant could "demonstrate[] a strong likelihood of prevailing on the merits." 555 U.S. at 21 (internal quotation marks omitted). The Supreme Court explained that "the Ninth Circuit's 'possibility' standard is too lenient" and failed to give sufficient weight to the

5

"extraordinary" nature of preliminary relief or to the Supreme Court's "frequent[]" admonition that the proponent of preliminary relief must make a clear showing "that irreparable injury is *likely* in the absence of an injunction." *Id.* at 22 (emphasis in original). Following *Winter*, the D.C. Circuit has expressed some doubt about the continuing viability of the sliding scale test, but has yet to issue a definitive ruling setting the test aside. *See Davis*, 571 F.3d at 1292; *Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011). In *Sherley*, for instance, the Court read "*Winter* at least to suggest if not to hold that a likelihood of success is an independent, free-standing requirement for a preliminary injunction." 644 F.3d at 393 (internal quotation marks omitted). And in *Davis*, two judges concurred, explaining in dicta that "under the Supreme Court's precedents, a movant cannot obtain a preliminary injunction without showing *both* a likelihood of success *and* a likelihood of irreparable harm, among other things." *Davis*, 571 F.3d at 1296 (Kavanaugh, J., joined by Henderson, J., concurring). But, while strongly signaling the demise of the sliding scale test, the D.C. Circuit has been clear that it has yet to resolve the issue. *See id.* at 1292 (majority opinion). As a result, most district courts in this Circuit have continued to apply the sliding scale test out of an abundance of caution, at least in cases where the movant cannot satisfy even the less demanding standard. *See, e.g.*, *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 933 F. Supp. 2d 58, 76 (D.D.C. 2013).

The Court will do the same here, but with one proviso: It is clear from *Winter* that a mere "possibility" of irreparable harm will not suffice. *Winter*, 555 U.S. at 22. Rather, a showing that irreparable injury is "likely" is the *sine qua non* for obtaining a preliminary injunction—it is what justifies the extraordinary remedy of granting relief before the parties have had the opportunity fully to develop the evidence and fully to present their respective cases. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A

movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief."); *Texas Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 241–42 (D.D.C. 2014); *Trudeau v. FTC*, 384 F. Supp. 2d 281, 296 (D.D.C. 2005).  Thus, where a party seeking a preliminary injunction fails to make the required showing of irreparable injury, the matter is settled, and the Court must deny the motion.  As explained below, that principle is dispositive here.  Plaintiffs have failed to demonstrate that Mohmand or Khadem are likely to suffer irreparable injury in the absence of injunctive relief, and their motion thus fails at the threshold.  But, even if they could clear this essential hurdle, they would not be entitled to relief because they have not carried their burden of demonstrating a likelihood of success on the merits or that the balance of hardships and public interest tip in favor of interim relief.

**A.  Irreparable Injury**

The D.C. Circuit "has set a high standard for irreparable injury." *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297.  To demonstrate irreparable harm, "the injury must be both certain and great; it must be actual and not theoretical," and the movant carries the burden of showing that "[t]he injury complained of is of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (internal quotation marks omitted) (emphasis in original).  By definition, moreover, economic loss that is *recoverable* in a final judgment or by any other reasonable means does not constitute *irreparable* injury. *See Wis. Gas Co. v. Fed. Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).  Similarly, transient conditions, including those resulting from discrimination in the workplace, that do not cause an injury eluding later recompense or correction do not constitute irreparable injury.  Rather, the movant must demonstrate that equity justifies immediate relief because, if

delayed, it is unlikely that relief will remain available. Plaintiffs have failed to carry this heavy burden.

   1. *Plaintiff Mohmand Has Not Demonstrated the Likelihood of an Irreparable Injury*

Plaintiff Mohmand asserts three theories of irreparable injury. First, he contends that "[i]f [he remains] assigned to production without training, it could jeopardize the shows which he produces." Dkt. 41 at 4. That injury, however, is not to Mohmand but to the shows he produces. It is also entirely speculative. Mohmand has offered no competent evidence that his lack of training has jeopardized any VOA programming. The amended complaint is unverified and thus not evidence, *see Armenian Assembly of Am., Inc. v. Cafesjian*, 758 F.3d 265, 284 n.14 (D.C. Cir. 2014) and, in any event, it does not speak to whether Mohmand's present assignment is likely to damage the quality of the shows he produces. Moreover, although Mohmand submitted a declaration on November 10, 2015, after he had been performing his new duties for a few weeks, he does not identify any misstep or other incident resulting from his lack of training. *See* Dkt. 43-1 at 1–5 (Second Mohmand Decl.).

Second, Mohmand contends that his "job, reputation, and his interaction with his colleagues and the audience, will be irreparably damaged" if he is "forced to do production for which he has not been fully trained." Dkt. 41 at 4. Plaintiffs are correct that harm to reputation can, in certain circumstances, constitute irreparable injury. *See Brodie v. U.S. Dep't of Health and Human Services*, 715 F. Supp. 2d 74, 84 (D.D.C. 2010); *Trudeau*, 384 F. Supp. 2d at 297. Indeed, because "[i]njury to reputation and goodwill is not easily measured in monetary terms," it is "often viewed as irreparable." 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (3d ed. 2013 & 2015 Supp.). "[A]s with all other forms of irreparable harm," however, "the showing of reputational harm must be concrete and corroborated, not

8

merely speculative." *Trudeau*, 384 F. Supp. 2d at 297.  Conjecture and "vague and unsupported" assertions of harm are not sufficient.  *Brodie*, 715 F. Supp. 2d at 84.  Yet that is all that Mohmand offers.  He fails to identify any embarrassment that has actually occurred while performing his new duties; he merely speculates that he is likely to make mistakes without additional training.  Dkt. 41 at 4.  His assertions, moreover, are uncorroborated.  He has not identified anyone who thinks less of him based on his performance or any evidence about the quality of the shows that he produces.  And based on the current record, there is no basis to conclude that, even if Mohmand were to make a mistake, his colleagues would blame him rather than Ibrahim Nasar for that error or that VOA's listenership would have any reason to attribute the error to Mohmand.

Third, Mohmand contends that his new duties are taking a toll on his health.  Dkt. 43 at 5.  He says that he cannot sleep at night, that his heart rate increases when he thinks about his responsibilities, and that he suffers from dizzy spells, nausea, and vomiting.  Dkt. 43-1 at 4 (Second Mohmand Decl. ¶ 26).  As an initial matter, it is unclear how much of this relates to his current assignment and how much of it is a product of what he perceives, more generally, to be a hostile work environment—which is not an asserted basis for the motion for preliminary relief.  He notes, for example, that "[i]t has been *several years* that [he] has been trying [his] best to resolve this issue, to keep [his] chin up and to believe that somehow this situation will change," but it has not changed, and instead has "only became worse."  *Id.* (Second Mohmand Decl. ¶ 23) (emphasis added).  More importantly, none of Mohmand's contentions are supported by evidence offered by a medical expert.  Mohmand had every opportunity to offer medical testimony but declined to do so.  The Court does not doubt Mohmand's assertions that he is

9

under stress, which has resulted in physical manifestations. But, absent some medical testimony, the Court is not in a position to assess the extent or gravity of those symptoms.

      2. *Plaintiff Khadem Has Not Demonstrated the Likelihood of an Irreparable Injury*

Khadem identifies two potential irreparable harms. First, she argues that she is a highly regarded radio personality who has lost much of her audience because VOA has failed to assign her to host talk shows. Under the current schedule, she is assigned to only one talk show, and her role there is only as a substitute on a show addressing medical issues. Dkt. 41-2 at 1 (First Khadem Decl. ¶ 4). Khadem asserts that this limited role has caused, and will continue to cause, "great damage to [her] reputation." *Id.* She notes, for example, that on one occasion when she "was on the air as a substitute, a caller called in to call [her] a 'spare tire' for the real journalists." *Id.* She also asserts that, as a substitute, she often lacks sufficient notice to prepare a show of a quality consistent with her existing reputation. Dkt. 43-1 at 6 (Second Khadem Decl. ¶ 3). And, more fundamentally, she contends that she has lost her "listening audience" due to prior scheduling decisions and that the harm to her professional reputation has only "increase[ed]" under the new schedule because she is "consistently los[ing] [her] listening audience." Dkt. 43-1 at 7–8 (Second Khadem Decl. ¶ 10).

As Plaintiffs' counsel acknowledged at oral argument, however, Khadem has not had her own talk show since 2010. Her point is not that the new schedule is inflicting some new harm but that the longer she is off the air, the harder it is to maintain trust with her audience. That contention misunderstands the purpose of a preliminary injunction, which is not to remedy a past wrong but to prevent a current or imminent irreparable injury from occurring. Thus, to demonstrate irreparable injury, Khadem must show that the current schedule is causing her a discrete harm that is concrete, non-speculative, and supported by more than the movant's own

10

conclusory assertions. Here, Khadem is on the air, but as a newscaster rather than a talk show host. Dkt. 41-2 at 1 (First Khadem Decl. ¶ 4), 7–8. Moreover, there is no evidence—other than Khadem's own speculation—that the current schedule is causing her to lose an audience that she has, by her own admission, not had since 2010. Because Khadem has not made a clear showing—or, indeed, any showing at all—that a preliminary injunction is necessary to prevent the irretrievable loss of listeners whom she has not already lost, her principal claim of irreparable injury necessarily fails.

Like Mohmand, Khadem also contends that her work conditions are taking a toll on her health. She asserts that her "mental and physical health ha[ve] been compromised," that she has been "left . . . extremely upset" and has "had to leave work in the middle of the day with a break-out of hives," and that she is "under extreme and undue stress." Dkt. 43-1 at 9 (Second Khadem Decl. ¶¶ 13, 18). Like Mohmand, however, Khadem has failed to support her contention with any concrete evidence and has failed to identify the extent to which these conditions would be remedied by granting a preliminary injunction. Indeed, given the fact that Khadem has been without a talk show since 2010, there is little basis for the Court to conclude that her symptoms are the result of the new schedule as opposed to the broader allegations she and the other plaintiffs have made regarding their work environment. In any event, as with Mohmand, absent evidence offered by a medical expert, the Court is not in a position to assess the extent or gravity of these symptoms or whether there is a nexus to the interim relief Khadem currently seeks.

\* \* \*

Because neither Mohmand nor Khadem has shown that "there is a clear and present need for equitable relief to present irreparable harm," *Wisc. Gas Co.*, 758 F.2d at 674 (internal quotation marks omitted), and because irreparable injury is the *sine qua non* to invoke the Court's

equitable power to grant the extraordinary remedy of interim relief, *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297, the Court must deny their Motion for a Preliminary Injunction, Dkt. 41. To avoid any uncertainty, however, the Court will also address the remaining factors for issuance of a preliminary injunction.

**B. Likelihood of Success on the Merits**

As with the other factors, the party seeking preliminary relief bears the burden of demonstrating a likelihood of success on the merits. *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). The Board contends that Plaintiffs' allegations regarding the recent schedule changes are not properly before the Court because Plaintiffs have not properly exhausted those claims through the administrative EEO process and have not pled them in the operative complaint. Dkt. 42 at 3, 5. As the Board correctly notes, the Supreme Court has held that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Thus, in general, a plaintiff is not entitled to sue a federal employer with respect to alleged, specific acts of discrimination or retaliation that the plaintiff has not timely raised and exhausted in the administrative EEO process. That rule does not apply, however, to hostile work environment claims because, by their very nature, those claims "cannot be said to occur on any particular day." *Id.* at 115. Because hostile work environment claims involve "a series of separate acts," it is possible to allege that the violation has both "occurred" and is still "occurring." *Id.* at 117 (internal quotation marks omitted). In that event, all that the plaintiff need do is timely exhaust EEO remedies with respect to one act in the series.

Before *Morgan*, moreover, the D.C. Circuit applied a rule that permitted a plaintiff to pursue an unexhausted claim if that claim was "like or reasonably related to the allegations of the [exhausted] charge and grow[s] out of such allegations." *Park v. Howard*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks omitted). Under this test, the plaintiff is required, "[a]t a minimum," to show that his or her claim arose "from 'the administrative investigation that [could] reasonably be expected to follow the [administrative] charge of discrimination.'" *Id.* (quoting *Chisholm v. USPS*, 665 F.2d 482, 491 (4th Cir. 1981)). Most district court decisions in this circuit have concluded that this rule did not survive *Morgan*, *see, e.g., Rashad v. Wash. Metro. Area Transit. Auth.*, 945 F. Supp. 2d 152, 166 (D.D.C. 2013) (collecting cases that support this majority rule), although a handful of decisions have continued to apply the "reasonably related" rule, *see Mount v. Johnson*, 36 F. Supp. 3d 74, 85 (D.D.C. 2014) (collecting cases that support the minority rule), and the D.C. Circuit has yet to resolve the issue, *see Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010).

Notwithstanding the Supreme Court's recognition in *Morgan* of the continuing nature of hostile work environment claims, and even assuming that the "reasonably related" rule remains good law after *Morgan*, the Court cannot conclude on the current record that Plaintiffs are likely to succeed on the merits. To start, there is at least a substantial question whether Mohmand and Khadem have met the exhaustion requirement as to *any* claim asserted in the litigation. As *Morgan* held, a plaintiff pursuing a hostile work environment claim must timely exhaust EEO proceedings with respect to at least one "act contributing to the claim." 536 U.S. at 117. Likewise, the "reasonably related" rule required timely exhaustion of the "related" claim. *Park*, 71 F.3d at 907. Here, however, the Board has raised a substantial question whether Mohmand or Khadem brought any relevant act of alleged discrimination to the attention of an EEO counselor

within 45 days of the "matter alleged," as required by the governing regulations, *see* 29 C.F.R. § 1614.105(a)(1). Both Mohmand and Khadem initiated the EEO process by contacting the EEO counselor for the Board on October 11, 2012. Dkt. 30 at 2, 4. Both also contend that they have been subjected to ongoing discrimination going back to early 2010. *See, e.g.*, Dkt. 30-2 at 32 (Mohmand); *id*. at 99 (Khadem). To date, however, neither has submitted any evidence demonstrating that they brought a discrete discriminatory act occurring within the 45 days of October 11, 2012, to the attention of the EEO counselor.[2] Although timely exhaustion under Title VII and the ADEA is an affirmative defense for which the Board carries the burden of proof, *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997), here, the Board has come forward with evidence sufficient to satisfy its burden. Absent some effort by Plaintiffs convincingly to assert equitable tolling, *see id.*, or otherwise to explain why the government is not entitled to summary judgment, Plaintiffs cannot show that they are likely to prevail on the merits.

Even if Plaintiffs can overcome the Board's exhaustion defense—which is currently pending before the Court in the Board's motion for summary judgment and which the Court will refrain from deciding at this time—Plaintiffs still have not, on the present record, carried their burden of showing that they are likely to succeed on the merits. Plaintiffs' argument on the merits is both brief and unsupported by competent evidence. Dkt. 41 at 2–4. Most notably, they

---

[2] In support of its Motion to Dismiss or, in the Alternative, for Summary Judgment, the Board did submit notes from the EEO counselor indicating that Khadem complained that "others [took] credit for her work in the logs as recently as late November 2012 or early December 2012," Dkt. 30-2 at 75, but those notes do not identify who those "others" were or otherwise provide a basis for the Court to assess whether this accusation is sufficient to satisfy the timeliness requirement discussed above. Similarly, documents generated by the EEO counselor suggest that both Mohmand and Khadem complained about "ongoing" discrimination, *see id.* at 32, 99, but that vague statement fails to satisfy the "discrete" act requirement of *Morgan* or the "reasonably related" rule, to the extent applicable.

14

assert that their "showing of probable success on the merits is fully detailed in the Amended Complaint," *id.* at 2, but the amended complaint is unverified and, accordingly, is not evidence, *see Cafesjian*, 758 F.3d at 284 n.14. Pleading facts does not make them true; the question is whether Plaintiffs will be able to prove those facts, not whether they have alleged them. For similar reasons, Plaintiffs' reliance on allegations of discrimination made by Plaintiffs' counsel in email correspondence with the Board, *see* Dkt. 41-2 at 8–21, and unsupported assertions made in Plaintiff's motion, *see* Dkt. 41 at 2–4, do not amount to evidence of discrimination. And, finally, the Mohmand and Khadem declarations submitted in support of Plaintiffs' motion, *see* Dkt. 41-2 at 1–4, Dkt. 43-1 at 1–10, contain only conclusory allegations of discrimination—e.g., the new schedule "is targeting the seniors," and Ibrahim Nasar "later harassed me for my lack of training," Dkt. 41-2 at 3–4 (First Mohmand Decl. ¶¶ 6, 7)—that do little to carry Plaintiffs' burden, particularly when considered in light of the Board's reliance on the Ibrahim Nasar declaration, which asserts that the current assignments were made for legitimate, nondiscriminatory reasons, Dkt. 42-2 at 1–2.

It bears emphasis that the Court does not express a view on the *ultimate* merit (or lack thereof) of Plaintiffs' claims, but merely concludes that, on the limited record currently before it, Plaintiffs have yet to carry their burden of demonstrating a likelihood of success on the merits. Accordingly, this factor also weighs against issuance of a preliminary injunction.

**C. The Balance of Equities and the Public Interest Both Weigh Against Granting Preliminary Relief**

Finally, the Court also concludes that neither the balance of equities nor the public interest weigh in favor of granting preliminary relief.

As to the balance of equities, the Board correctly notes that the work schedule at issue represents a zero-sum game: A decision to give Khadem a talk show or to switch Mohmand's

production duties for an editorial role "would potentially impact third parties whose schedules would need to be adjusted to accommodate the preferences of Plaintiffs." Dkt. 42 at 7. It is true that a court may "bump" workers who have taken a position of a co-worker who was wrongfully denied that position. *See Lander v. Lujan*, 888 F.2d 153, 155–56 (D.C. Cir. 1989). But the authority to grant that type of extraordinary relief is discretionary, *id.*, and it requires that the Court consider all the relevant circumstances and alternative remedies. *See also* 42 U.S.C. § 2000e-5(g)(1) (allowing courts to grant "any . . . equitable relief" it "deems appropriate"); 29 U.S.C. § 626 (allowing courts "to grant such legal or equitable relief as may be appropriate"). In the present context, however, the Court lacks any information regarding the VOA staff who currently occupy the roles that Mohmand and Khadem seek, how those individuals would be affected, or how small changes in the schedule might have ripple effects, requiring a series of changes throughout the entire schedule. If the Court were to grant a preliminary injunction but Plaintiffs ultimately did not prevail, moreover, yet another series of changes might be required, as those removed from their existing positions they may have preferred would likely contend that the previous schedule should be restored.

Such a series of potential changes would not only affect the interests of third parties, but would be highly disruptive to the Pashto Service on multiple levels. Most importantly, it would substitute a court-ordered schedule for the editorial choices made by those charged with overseeing the content of what is an inescapably creative medium. It would place the Court, for example, in the role of deciding that Khadem should have a talk show, without regard to management's views about the popularity of other hosts, Khadem's appeal to listeners, and the content that Khadem would then decide to put on the air. Even following a final judgment, that

is an extraordinary remedy to request from a court—and, absent compelling reason, it is not one that is suited for preliminary relief.

For similar reasons, the public interest militates against preliminary relief affecting the schedule and assignments for the Pashto Service. As explained, the Court would be hesitant under any circumstances to order relief that affects the content of news broadcasts, political commentary, and related talk shows—even where, as here, that content constitutes government speech that is not protected by the First Amendment. Those types of judgments lie far from the traditional role and competence of the judiciary. If Plaintiffs ultimately prevail, the Court will need to consider what relief is appropriate. For present purposes, however, the Court is convinced that it is not in the public interest to insert itself into the editorial process based on what, at this point, amounts to little more than allegations of discrimination.

### III. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Preliminary Injunction, Dkt. 41, is hereby **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: February 8, 2016