## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TAHER ACHAGZAI, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BROADCASTING BOARD OF GOVERNORS, <br><br> *Defendant*. | Civil Action No. 14-768 (RDM) |

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Defendant's motion to dismiss or, in the alternative, for summary judgment.  Dkt. 30.  The amended complaint includes a variety of claims alleging workplace discrimination on the basis of age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), and on the basis of national origin, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII").  For the reasons explained below, the Court concludes that four of the plaintiffs—Taher Achagzai, Syed B. Shah, Mohammed Zamen Mohmand, and Zeba Khadem—failed to exhaust their administrative remedies, and defendant's motion is therefore **GRANTED** as to those four plaintiffs.  But the fifth plaintiff, Naseem S. Stanazai, did exhaust his administrative remedies as to some of his claims, and the Court concludes that with respect to some, but not all, of those claims, Stanazai has stated a claim upon which relief may be granted.  Defendant's motion for summary judgment is therefore **GRANTED IN PART** and **DENIED IN PART** as to Stanazai's claims.

## I. BACKGROUND

**A.      Factual Background**

Plaintiffs Taher Achagzai, Syed S. Shah, Mohammed Zamen Mohmand, Zeba Khadem,

and Naseem S. Stanazai are broadcasters at the Pashto Language Service, a division of Voice of

America ("VOA").[1]  Compl. ¶¶ 5–6.[2]  All five plaintiffs are naturalized United States citizens of

Afghan origin whose native languages are Pashto and Dari.  *Id.* ¶ 3.  Their ages range from 62 to

77, and each has worked at VOA for more than 14 years—three have been there for more than

30 years.  *Id.* ¶ 8.  According to the complaint, each plaintiff has been highly regarded in their

field and received positive annual evaluations and various awards and promotions.  *Id.* ¶ 10.

Defendant Broadcasting Board of Governors ("the Board") is an independent federal

agency that oversees all non-military, international broadcasting sponsored by the federal

government, including VOA.  Compl. ¶ 11.  The complaint alleges that the plaintiffs suffered a

laundry list of workplace indignities starting in 2006 while employed by the Board.  *See, e.g.*, *id.*

¶¶ 13-15.  The crux of the complaint is that the older, Afghani plaintiffs suffered these harms as

VOA attempted to implement a "new format," a term the complaint uses often but never defines,

which appears to be an effort by VOA to modernize its offerings.  *Id.* ¶¶ 13–18; Dkt. 50 at 4.

The complaint lists 37 categories of discriminatory conduct that describe allegations of unfair

and unannounced workplace scheduling, frequent downgrades in assignments, favoritism shown

toward junior staff in all facets of work, a barrage of insults and insulting behavior aimed toward

---

[1]  Voice of America is a government-funded, "multimedia broadcast service" whose mission is to
provide "accurate, balanced, and comprehensive news and information to an international
audience."  *About VOA*, Voice of America, http://www.insidevoa.com/info/about_us/1673.html
(Dec. 11, 2015).  *See also* Pub. L. No. 94-350, 90 Stat. 831 (1976).

[2]  All references to the complaint are to the amended complaint found at Dkt. 25.

Plaintiffs, and a refusal to assist the senior staff in the transition to "the new format."  Compl.

¶ 14.  The complaint alleges that these abuses began in 2006 but grew worse when Mohammed

Ibrahim Nasar became the Managing Editor of the Pashto Service at VOA in 2010.  *Id.* ¶ 15.

The complaint also alleges that at least some of the plaintiffs voiced their concerns at various

times to upper management at VOA and received assurances that conditions would improve.  *Id.*

¶¶ 19-28.  Plaintiffs further allege that in actuality, however, Nasar and other supervisors

retaliated against them by continuing to change their schedules and removing them from more

desirable assignments. *Id*. ¶¶ 23–25.  Plaintiffs allege that, as the situation grew more toxic,

supervisors insulted them at staff meetings, encouraged them to retire, and assigned them tasks

that were impossible to complete in the amount of time given. *Id*. ¶¶ 31–32.  After Plaintiffs

brought their concerns to the Board's human resources department, a supervisor allegedly placed

"a gag on seniors' work related e-mails," although it is not entirely clear what that entailed.  *Id.*

¶ 38.  A higher-level supervisor later recognized that the "gag" was improper and against VOA

policy and lifted it.  *Id.*  Unsatisfied with the response from the human resources department,

Plaintiffs sought administrative recourse through Equal Employment Opportunity ("EEO")

counseling with the Board's office of civil rights approximately six months after first bringing

their concerns to the human resources department.

**B.     Procedural Background**

      Plaintiffs Achagzai, Shah, Mohmand, and Khadem each began the administrative process

by contacting an EEO counselor on October 11, 2012.  *See* Dkt. 30-2 at 5 (Mohmand), 37

(Shah), 53 (Achagzai), 75 (Khadem); Dkt. 50 at 3.  Plaintiff Stanazai, on the other hand, first

sought EEO counseling on March 22, 2013.  *Id.* at 101.  All five followed up with formal

discrimination complaints accompanied by written attachments detailing their personal

allegations of discrimination.  The first four plaintiffs filed their administrative complaints

between December 8 and December 12, 2012, *see id.* at 14 (Mohmand), 35 (Shah), 58

(Achagzai), 86 (Khadem), while Stanazai filed his on April 24, 2013, *see id.* at 106.  Defendant

never issued a final decision on any of Plaintiffs' complaints because Plaintiffs requested a

hearing before the Equal Employment Opportunity Commission ("EEOC") before Defendant

had a chance to render any decision.  Dkt. 30-2 at 4 (McDay Decl. ¶ 11).  The EEOC, in turn,

dismissed its own proceeding when Plaintiffs brought this action on May 5, 2014.  *Id.* (McDay

Decl. ¶ 12).

The original complaint covered more than 200 pages, including 18 counts and more than

800 numbered paragraphs.  *See* Dkt. 1.  The Board moved to dismiss counts 10–18, all of which

alleged various common law torts, on the grounds that Plaintiffs had not exhausted their

administrative remedies under the Federal Tort Claims Act—the only waiver of sovereign

immunity that would allow Plaintiffs to sue the government for tort violations.  Dkt. 14.

Defendant also moved to strike the complaint for failure to comply with Federal Rules of Civil

Procedure 8 and 12(f) because it was too long and repetitive to allow the Board a reasonable

opportunity to respond.  *Id.*  Plaintiffs, meanwhile, moved to expedite the proceedings, arguing

that their advanced age and health concerns necessitated an expedited schedule.  Dkt. 17.  The

Court granted both of Defendant's motions and denied Plaintiffs' motion to expedite.  *See* Dkt.

24; *Achgazai v. Broad. Bd. of Governors*, 109 F. Supp. 3d 67 (D.D.C. 2015).  The Court

dismissed counts 10–18 without prejudice and granted Plaintiffs leave to file an amended

complaint that complied with Rules 8 and 12(f) on or before June 29, 2015.  *Id.* at 8.

Plaintiffs met that deadline and filed an amended complaint that dropped the previous

counts alleging common-law tort violations and that omitted much, although not all, of the

4

repetition contained in the original complaint.  *See* Dkt. 25.  The amended complaint asserts nine

counts against the Board: (1) "Pattern or Practice Discrimination–Systemic Disparate Treatment"

on the basis of national origin in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*; (2) "Pattern or

Practice of Discrimination–Systemic Disparate Treatment" discrimination on the basis of age in

violation of the ADEA, 29 U.S.C. § 621, *et seq.*; (3) disparate impact discrimination on the basis

of national origin, in violation of Title VII; (4) disparate impact discrimination on the basis of

age, in violation of the ADEA; (5) discrimination on the basis of national origin and age, in

violation of both Title VII and the ADA, through a hostile work environment and disparate

treatment; (6) discrimination on the basis of national origin and age, in violation of the ADEA

and Title VII, through "systemic harassment" in the workplace; (7) "willful discrimination" in

violation of Title VII and the ADEA; (8) workplace retaliation, in violation of Title VII; and (9)

workplace retaliation in violation of the ADEA. Dkt. 25 at 28–46.  The plaintiffs seek

compensatory damages of $350,000 each, punitive damages of $750,000, an injunction

prohibiting the Board from engaging in further discrimination, and various costs and fees,

including attorney's fees.  *Id.* at 47–49.

In lieu of filing an answer, the Board moved to dismiss or, in the alternative, for summary

judgment. Dkt. 30.  Attached to its motion is a declaration from Shennoa McDay, the Acting

Director of the Board's office of civil rights, along with more than 100 pages of documents that

Plaintiffs filed during the administrative process before filing suit.  *See* Dkt. 30-2.  Plaintiffs

opposed the Board's motion and attached to their opposition brief declarations from Ghilzai

Amanullah, the former Editing Manager of the Pashto Service, *see* Dkt. 33-2, and from each of

the five plaintiffs, *see* Dkt. 33-3.  These declarations largely repeat Plaintiffs' administrative

complaints and do not dispute the authenticity or veracity of any of the attachments to the

McDay declaration; rather, they seem to incorporate those records by reference. *See id.* at 4, 7, 12, 18, 23.

Just days after the Board's motion to dismiss was fully briefed, two of the plaintiffs—Khadem and Mohmand—filed a motion for a preliminary injunction, asking the Court to halt further scheduling changes at VOA. *See* Dkt. 41. After that motion was fully briefed, the Court held oral argument on all of the pending motions. At oral argument, the Court informed the parties that it would deny the motion for a preliminary injunction, and it issued a memorandum opinion and order shortly thereafter, explaining that Khadem and Mohmand had not satisfied any of the four factors necessary to obtain preliminary relief. *See* Dkt. 47; *Achagzai v. Broad. Bd. of Governors*, No. 14-cv-768, 2016 WL 471274 (Feb. 8, 2016). At the conclusion of oral argument, the Court explained that, as the record currently stood, it appeared that the first four plaintiffs (all but Stanazai) had failed to exhaust their administrative remedies for any of the claims alleged in the complaint but also explained that it was troubled by some vagueness in the record. For that reason, the Court provided Plaintiffs with two weeks to file a supplemental memorandum "identif[ying] for each of the five plaintiffs discrete acts of discrimination that occurred within 45 days of when they first sought counseling from an EEO counselor." Feb. 5, 2016, Minute Order. The Court further instructed that the supplemental filing "should be supported by citations to the record before the Court or supported by other competent evidence" and "should also demonstrate that the Plaintiffs included the cited discriminatory acts as part of their administrative complaint, thereby exhausting their remedies." *Id.* Plaintiffs filed their supplemental memorandum on February 18, 2016, *see* Dkt. 49, and filed a second version correcting small errors the next day, *see* Dkt. 50. The Board filed its response on March 1, 2016. *See* Dkt. 51.

**C.      Statutory and Regulatory Background**

As Plaintiffs recognize, *see* Dkt. 33-1 at 2, the Board is an independent federal agency, and Plaintiffs are therefore federal employees.  Both Title VII and the ADEA—the two statutes on which Plaintiffs' remaining counts rely—require federal employees to exhaust administrative remedies before filing suit.  *See* 42 U.S.C. § 2000e–16(c) (Title VII); 29 U.S.C § 633a(b)-(d) (ADEA); *see also Washington v. Washington Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998) (noting that a plaintiff must exhaust administrative remedies "[b]efore suing under either the ADEA or Title VII").  The rules relating to Title VII and ADEA claims, however, are not identical.

To exhaust administrative remedies under Title VII, a federal employee must first "initiate contact" with an EEO counselor within 45 days of the allegedly discriminatory conduct. 29 C.F.R. § 1614.105(a)(1); *see also In re James*, 444 F.3d 643, 644 (D.C. Cir. 2006).  At the initial counseling session, the EEO counselor "must advise individuals in writing of their rights and responsibilities," including their right to an administrative hearing and their right to file an administrative complaint.  29 C.F.R. § 1614.105(b).  If the dispute is not resolved within 30 days, the counselor is required to provide the employee with "a notice explaining the administrative complaint procedure."  *In re James*, 444 F.3d at 644; *see also* 29 C.F.R. §§ 1614.105(d); 1614.106.  The employee then has 15 days to file an administrative complaint with his or her agency.  29 C.F.R. § 1614.106; *In re James*, 444 F.3d at 644.  "After the agency has the opportunity to investigate the matter, the complainant may demand an immediate final decision from the agency or a hearing before an EEOC administrative law judge."  *Koch v. Walter*, 935 F. Supp.2d 143, 149 (D.D.C. 2013); *see also* 29 C.F.R. §§ 1614.106(e)(2), 1614.108(f)-(h).  The employee may file suit in federal district court within 90 days of receipt of

the agency's or the EEOC's final determination or after 180 days have elapsed since the filing of

a complaint with the agency or the EEOC, if neither has taken a final action.  *See* 29 C.F.R.

§ 1614.407.

Under the ADEA, a federal employee may elect to follow these same procedures or to

take an alternative path to federal court.  Unlike in Title VII cases, the ADEA permits "the

employee [to] bring a claim directly to federal court so long as, within 180 days of the allegedly

discriminatory act, [the employee] provides the EEOC with notice of [her] intent to sue at least

30 days before commencing suit."  *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003).  An

employee who elects this path need not file an administrative complaint.  *Id.*; *see also Kennedy v.*

*Whitehurst*, 690 F.2d 951, 964 (D.C. Cir. 1982).  Here, however, Plaintiffs conceded at oral

argument that they did not follow this alternative route, and there is no evidence in the record

that they provided the EEOC with the required notice.  *See* Dkt. 46 at 42–43.  They are thus left

with the same administrative exhaustion framework for their ADEA claims as the one that guides

their Title VII claims.  *See generally* 29 U.S.C. § 633a.

Exhausting administrative remedies is a prerequisite to filing suit under either the ADEA

or Title VII.  *See Rafi v. Sebelius*, 377 F. App'x 24, 25 (D.C. Cir. 2010) (unpublished) (affirming

a district court's dismissal of Title VII and ADEA claims because the plaintiff had not initiated

EEO contact within 45 days of the allegedly discriminatory hiring practice); *Fortune v. Holder*,

767 F. Supp. 2d 116, 122–23 (D.D.C. 2011) (dismissing plaintiff's claims under Title VII and

the Rehabilitation Act because he did not initiate EEO contact within 45 days of allegedly

discriminatory acts); *Drewrey v. Clinton*, 763 F. Supp. 2d 54, 62 (D.D.C. 2011) (granting the

government summary judgment as to plaintiff's Title VII claims based on incidents that occurred

more than 45 days before plaintiff initiated EEO counseling); *Dorns v. Geithner*, 692 F. Supp. 2d

119, 130–31 (D.D.C. 2010) (same).  Where an employee alleges discrete claims of discrimination, such as a failure to promote or a demotion, moreover, the employee must exhaust administrative remedies for each discrete claim, and "[e]ach discriminatory act starts a new clock for filing charges alleging that act."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  In contrast, where an employee alleges that he or she has been subject to a hostile work environment, the employee may proceed so long as "an act contributing to [his or her] claim occurs within the filing period."  *Id.* at 117.  If the employee can make that threshold showing, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability."  *Id.*  The entire hostile work environment claim is untimely, however, if the employee cannot identify at least one act that contributed to the hostile work environment and occurred within 45 days of when she initiated EEO contact.

The Supreme Court has recognized certain exceptions to the Title VII and ADEA exhaustion requirements.  Relevant here, courts may overlook a failure to comply with the EEOC's administrative deadlines under the doctrine of equitable tolling.  *See Morgan*, 536 U.S. at 113; *see also Zipes* v. *Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.").

## II.  STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) challenges the Court's jurisdiction to consider the claim.  A court may dismiss the complaint if it fails facially to plead facts sufficient to establish that the Court has jurisdiction, but "where necessary, the court may [also] consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint

supplemented by undisputed facts plus the court's resolution of disputed facts." *Herbert v. Nat'l Acad. of Scis.,* 974 F.2d 192, 197 (D.C. Cir. 1992). Thus, the Court may look beyond the allegations of the complaint to the extent necessary to satisfy itself that it has jurisdiction to hear the suit. Whether a rule 12(b)(1) motion to dismiss for lack of jurisdiction is facial or factual, the plaintiff bears the burden of establishing that the court has subject-matter jurisdiction. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).

A rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted, in contrast, is subject to a different set of procedures. A defendant may prevail on a 12(b)(6) motion only by demonstrating that the facts alleged in the complaint, and accepted as true for purposes of resolving the motion, do not warrant relief. *See Harris v. Ladner,* 127 F.3d 1121, 1123 (D.C. Cir. 1997). If the Court concludes that the movant's arguments go beyond the pleadings and require consideration of facts not alleged in the complaint, the Court may either deny the motion on that ground or may, where appropriate and with reasonable notice to the parties, convert the motion to dismiss to one for summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d).

A motion for summary judgement under Rule 56 implicates yet a third set of procedures. Here, the Court may consider the full record before it, but it may not resolve any bona fide factual disputes. The Court, accordingly, may grant summary judgment only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, the defendant has moved for summary judgment, it "bears the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has carried that burden, however, the

opposing party must come forward with declarations or other evidence showing that there is genuine issue of material dispute for the trier of fact. *Grimes v. District of Columbia*, 794 F.3d 83, 94–95 (D.C. Cir. 2015).

### III.  DISCUSSION

The Board argues that Plaintiffs' claims fail for two reasons.  First, it argues that they should be dismissed because Plaintiffs failed to exhaust their administrative remedies.  Second, it argues that the complaint fails to plead facts sufficient to support Plaintiffs' claims.  The Court agrees that plaintiffs Achagzai, Shah, Mohmand, and Khadem have failed to exhaust their administrative remedies, and it will grant the Board's motion as to those four plaintiffs on that ground.  As a result, the Court need not reach the Board's alternative contention that those four plaintiffs have failed to plead facts sufficient to support their discrimination and retaliation claims.  As to plaintiff Stanazai, however, the Court disagrees that he failed to exhaust his administrative remedies as to at least some of his claims.  The Court, accordingly, must consider whether Stanazai has alleged claims upon which relief may be granted.  The Court concludes that some of Stanazai's claims do not meet that standard but several do.  The Court will therefore grant the Board's motion in part and deny it in part as to Stanazai's claims.

Because the Court concludes that plaintiffs Achagzai, Shah, Mohmand, and Khadem (the "Achagzai Plaintiffs") and plaintiff Stanazai stand in substantially different positions, it will first address the claims of the Achagzai Plaintiffs before turning to Stanazai's claims.

### A.     Plaintiffs Achagzai, Shah, Mohmand, and Khadem

The Board contends that the Achagzai Plaintiffs' claims should be dismissed for failure to exhaust administrative remedies.  Before turning to the merits of that argument, however, it is necessary to address whether the failure to exhaust administrative remedies before filing suit

under the ADEA and Title VII is properly raised as a jurisdictional defense, a pleading

deficiency, or an affirmative defense.  According to the Board, the Court need not resolve this

question because "dismissal is appropriate under either Rule 12(b)(1) or Rule 12(b)(6)."  Dkt. 30

at 7 n.1.  The Court disagrees that the proper characterization of the defense is either unsettled or

inconsequential.

As an initial matter, it is settled that failure to exhaust ADEA and Title VII administrative

remedies does not deprive the federal district courts of jurisdiction.  As the Supreme Court has

admonished, "when Congress does not rank a statutory limitation on coverage as jurisdictional,

courts should treat the restriction as nonjurisdictional in character."  *Arbaugh v. Y & H Corp.*,

546 U.S. 500, 515–16 (2006).  Applying this principle, the D.C. Circuit has held in unequivocal

terms that "neither Title VII nor the ADEA incorporates a jurisdictional exhaustion

requirement."  *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 527 (D.C. Cir.

2010); *see also Artis v. Bernanke*, 630 F.3d 1031, 1034 n.4 (D.C. Cir. 2011).  The D.C. Circuit

has also repeatedly recognized that the exhaustion defense "is similar to a statute of limitations."

*In re James*, 444 F.3d at 647; *see also Colbert v. Potter*, 471 F.3d 158, 167 (D.C. Cir. 2006)

(quoting same); *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (explaining that the

Title VII exhaustion requirement "function[s] like [a] statute of limitations").  As such, the Title

VII and ADEA exhaustion requirements are properly viewed as affirmative defenses, and thus

"the defendant bears the burden of pleading and proving" the defense.  *Bowden*, 106 F.3d at 437;

*see also Koch v. Schapiro*, 699 F. Supp. 2d 3, 12 (D.D.C. 2010).

Far from simply affecting the proper label to attach to the motion, the characterization of

the exhaustion requirement as an affirmative defense means that Plaintiffs are not required to

plead exhaustion, and it means that the Board bears the burden of proving that Plaintiffs failed

adequately to exhaust their Title VII and ADEA administrative remedies.  Here, had the Board

simply moved to dismiss without identifying allegations in the complaint that effectively

conceded a failure to exhaust, it would not be entitled to prevail at this stage of the proceeding.

The Board went further, however, and also moved for summary judgment under Rule 56, and it

submitted evidence to support its contention that Plaintiffs failed to exhaust their administrative

remedies.  It submitted a "Statement of Material Facts not in Genuine Dispute," Dkt. 30 at 2–4,

supported by a factual declaration and by extensive exhibits setting forth a timeline of events

related to the administrative claims process for each of the five plaintiffs.  *See id.*; *see also* Dkt.

30-2.  In response, Plaintiffs failed to file their own statement of material facts, although they did

submit declarations and exhibits, *see* Dkt. 33-2, 33-3; Dkt. 50.  *But see* D.D.C. Civ. R. 7(h)(1)

("An opposition to . . . a motion [for summary judgment] shall be accompanied by a separate

concise statement of genuine issues setting forth all material facts as to which it is contended

there exists a genuine issue necessary to be litigated, which shall include references to the parts

of the record relied on to support the statement.").  Plaintiffs also filed additional evidence in

response to the Court's invitation to clarify the record.  *See* Dkt. 50.  It is against this procedural

and factual background that the Court must consider whether the Board is entitled to prevail on

its failure-to-exhaust affirmative defense.

  1. *Administrative Exhaustion*

  A federal employee who seeks to sue her agency for discrimination under Title VII or the

ADEA must, absent unusual circumstances, timely exhaust administrative remedies before

bringing suit.  *See Hamilton v. Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012); *Bowden*, 106

F.3d at 437.  As relevant here, the employee initiates this process by alerting an EEO counselor

of any alleged discrimination within 45 days of that discrimination.  *See* 29 C.F.R.

§ 1614.105(a).  If counseling does not resolve the matter, the EEO counselor must notify the employee of her right to file an administrative complaint, and she has 15 days after that notice to do so.  *Id.* § 1614.105(d).  There is some disagreement in the case law about whether an employee's eventual lawsuit is limited to claims included in the administrative complaint or whether the employee may also bring suit for "claims that are like or reasonably related to the allegations" in the complaint.  *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (internal quotation marks omitted); *see also Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010) (declining to decide whether *Park* remains good law following the Supreme Court's decision in *Morgan*, 536 U.S. 101); *Hicklin v. McDonald*, 110 F. Supp. 3d 16, 19 (D.D.C. 2015) (collecting cases).  Regardless, the employee's claims must, at a minimum, relate to allegations of discrimination that were timely raised in the administrative process.

For purposes of assessing timeliness, the Supreme Court has identified two categories of discrimination claims.  First, where the employee alleges that he or she was the victim of a "discrete retaliatory or discriminatory act," the timeliness inquiry focuses on that particular act.  *Morgan*, 536 U.S. at 110.  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in [a] timely" manner in the administrative process.  *Id.* at 113.  Second, where the employee alleges that he or she was the victim of a hostile work environment, a different rule applies.  In that context, because the "very nature" of the claim "involves repeated conduct," the unlawful employment practice "cannot be said to occur on any particular day."  *Id.* at 115.  As a result, as long as "*an* act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for purposes of determining liability."  *Id.* at 117 (emphasis added).  It is essential, however, that

the employee exhaust administrative remedies with respect to at least one act occurring within the time period specified in the statute or regulations for initiating the administrative process.

Applying this framework, the Court concludes that the Board has carried its burden of showing that each of the Achagzai Plaintiffs has failed timely to exhaust their administrative remedies.  It is undisputed that Taher Achagzai, Mohammed Mohmand, Syed Shah and Zeba Khadem initiated the EEO process on October 11, 2012, when they first conferred with the EEO counselor.  Dkt. 30-2 at 5 (Mohmand), 37 (Shah), 53 (Achagzai), 75 (Khadem); Dkt. 50 at 3.  As documented in the Board's summary judgment motion, moreover, when Achagzai, Mohmand, and Shah filed their administrative complaints, they each included a personal statement dated April 18 or 19, 2012, setting forth the various acts of discrimination that each allegedly suffered.  *See* Dkt. 30 at 3; Dkt. 30-2 at 16–26 (Mohmand statement); *id.* at 41–46 (Shah statement); *id.* at 60–67 (Achagzai statement).  Those dates present a substantial problem for them.  Under the EEOC regulations, they were required to initiate the counseling process within 45 days of the Board's allegedly discriminatory conduct.  Counting back from October 11, 2012, that means that they were required to identify in the administrative process "[a] discrete retaliatory or discriminatory act" that "occurred" *on or after* August 27, 2012, *Morgan*, 536 U.S. at 110, or "an act contributing to [a] claim" of hostile work environment that occurred *on or after* that date, *id.* at 117.  To the extent these three plaintiffs' administrative complaints were premised on their April 2012 personal statements—which were apparently submitted more than four months *before* August 27, 2012—that would seem an impossibility.

The facts are slightly different for Plaintiff Khadem, but the problem is the same.  She initiated the EEO counseling process on October 11, 2012, like Achagzai, Mohmand, and Shah.  *See* Dkt. 30 at 4.  She brought her formal complaint around the same time they did, in her case

on December 9, 2012.  *See id.*  But unlike her co-plaintiffs, the statement of facts she attached to her complaint is undated (and unsigned).  *See id.*; *see also* Dkt. 30-2 at 80–85 (Khadem statement).  So in contrast to Achagzai, Mohmand, and Shah, Khadem's statement does not—on its face—demonstrate that it was prepared more than 45 days before she initiated the EEO process.  A review of her statement, however, fails to reveal any allegation of retaliation or discrimination occurring within 45 days of October 11, 2012, when Khadem initiated the EEO process.  She refers, for example, to "three false and accusatory emails" that she received in March 2012 and to a "new schedule" adopted in April 2012, which she contends was unfair.  Dkt. 30-2 at 81, 85.  Each of these events occurred well more than 45 days before Khadem initiated the EEO process, and she has failed to identify any event that allegedly occurred after August 27, 2012.  As a result, the evidence before the Court supports the conclusion that she, too, failed timely to exhaust her administrative remedies, at least with respect to the allegations contained in her factual statement.

The Board made these points in its motion for summary judgment, *see* Dkt. 30 at 8–24, and Plaintiffs did not dispute the Board's rendition of the relevant facts.  At oral argument, however, the Court noted that there was a lack of clarity in the record as to whether the April personal statements reflected the entirety of the claims that the Achagzai Plaintiffs raised with the EEO counselor or in their administrative complaints.  The EEO counselor's reports addressing the claims of each of these plaintiffs asserted that the claims "continu[ed] to" the date of the report, Dkt. 30-2 at 5 (Mohmand), 37 (Shah), 53 (Achagzai), 75 (Khadem), and other documents indicated that the Board itself viewed their administrative complaints as alleging "ongoing" harassment, *id.* at 30 (Mohmand), 48 (Shah), 70 (Achagzai), 97 (Khadem).  The counselor's report also reflected that he conferred with Plaintiffs' counsel regarding the matter.

16

*Id.* at 7 (Mohmand), 39 (Shah), 55 (Achagzai), 77 (Khadem).  In some cases, moreover, the counselor's report referred to conduct occurring as late at November or December 2012, *id.* at 37 (Shah), 75 (Khadem), although there is insufficient detail regarding that alleged conduct—purportedly changing a "log" to give credit to others for work done by Shah and Khadem—to determine who was responsible or whether the alleged conduct is actionable, and it does not appear that Plaintiffs have included any corresponding allegation in their lengthy complaint, *see generally* Dkt. 25.

In light of this lack of clarity, the Court offered Plaintiffs the opportunity to supplement the record with any additional evidence that they timely raised any discrete acts of discrimination in the administrative process.  *See* Feb. 5, 2016, Minute Order.  In particular, the Court explained that, to overcome the Board's showing that Plaintiffs had failed to timely exhaust, they would need to identify "for each of the five Plaintiffs discrete acts of discrimination that occurred within 45 days of when they first sought counseling from an EEO counselor" and would need to support any such showing with citations to the record or to other evidence.  *Id.*  Plaintiffs filed a timely response.  *See* Dkt. 50.  They have still, however, failed to identify any discrete act of retaliation or discrimination, or any act contributing to a hostile work environment claim, occurring between August 27, 2012, and October 11, 2012, that they raised in the administrative process.

In their supplemental filing, Plaintiffs assert in conclusory terms that they "were subjected to a hostile work environment based on their age and in reprisal for reporting harassing behavior." Dkt. 50 at 4.  The specific conduct allegedly occurring between August 27, 2012, and October 11, 2012, that they identify, however, is very limited.  First, they point to the Board's failure to include Plaintiffs "in social media advancements," such as "the google groups," and its

failure "even to invite [them] to learn or to have input on the subject." *Id.* at 5.  The evidence Plaintiffs cite, however, does not show that this conduct occurred during the relevant time period.  *See* Dkt. 50-1 at 13–25 (Exhs. 3 & 4).  Even more importantly, Plaintiffs do not even argue—much less show—that they raised this alleged exclusion from "social media advancements" with the EEO counselor or that they otherwise raised the issue in the administrative process.  Similarly, Plaintiffs point to the fact that Khadem and Achagzai were "forced to do field reporting," Dkt. 50 at 8, and they cite to exhibits from September 2012, *see* Dkt. 50-3 at 1–6 (Exhs. 10 & 11), which is within the 45-day window.  Those assignments, of course, could not have been included in the statement that Achagzai submitted in April 2012, and more importantly, Plaintiffs once again fail to offer any evidence that either grievance—if assigning a reporter to do field reporting can be called a grievance—was raised in the administrative process.

Plaintiffs also assert that Spozhmai Maiwandi, the Director of the South Asia Division of VOA, "retaliated against them for" bringing their allegations of mistreatment to the human resources division "and for writing emails related to Mr. Nasar's harassment."  Dkt. 50 at 9.  This is apparently a reference to the allegation, set forth in the complaint, that Maiwandi "put a gag on seniors' work related emails."  Compl. ¶ 38.  Both Plaintiffs' complaint and their supplemental filing, however, assert that this alleged harassment occurred on August 13, 2012—outside the 45-day window.  *See id.*; Dkt. 50 at 9.  The complaint, moreover, alleges that Maiwandi's supervisor, Rebecca McMenamin, countermanded this direction just four days later, Compl. ¶ 38, and there is no allegation that the "gag on . . . work related e-mail" continued after that time.  Because this alleged harassment apparently ended before August 27, 2012, even if

raised in the administrative process, it would also fail to satisfy the timely exhaustion requirement.

Finally, Plaintiffs also attach 175 pages of material to their supplemental filing. *See* Dkt. 50. Although it is possible that these extensive materials might identify additional incidents not discussed in Plaintiffs' brief, it is not the Court's role to mine the record in an effort to identify potentially helpful evidence not identified by the parties. *See, e.g.*, *Bombard v. Fort Wayne Newspapers*, 92 F.3d 560, 562 (7th Cir. 1996) ("It is not our function to scour the record in search of evidence to defeat a motion for summary judgment; we rely on the nonmoving party to identify with reasonable particularity the evidence upon which he relies."). This is particularly so here, where the Court permitted Plaintiffs to make the supplemental filing but admonished them that they would need to file a brief identifying "for each of the five Plaintiffs discrete acts of discrimination that occurred within 45 days of when they first sought counseling from an EEO counselor." Feb. 5, 2016, Minute Order. As explained above, the four Achagzai Plaintiffs have failed to do so. As a result, the Board has shown that there is no genuine dispute of material fact that these Plaintiffs failed to timely result their administrative remedies.

Finally, to the extent that the complaint relies in any part on a theory of discrimination based on events that occurred *after* Plaintiffs brought their formal administrative complaints in December 2012, *see, e.g.*, Compl. at 27 (alleging that the Board discriminated against all five plaintiffs based on their age when a supervisor issued a new schedule on April 10, 2013), they have, once again, failed to exhaust their administrative remedies. As the Court has already explained, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 113. If Defendant discriminated against Plaintiffs after they filed

19

their administrative complaint, they should have sought administrative relief for that discrimination.  There is no evidence in the record that they did so, nor do they argue otherwise.

    2. *Equitable Tolling*

Until their supplemental brief, Plaintiffs did not even attempt to refute the Board's showing that they failed timely to comply with EEO administrative deadlines.  Instead, they asked the Court to equitably toll those deadlines.  *See* Dkt. 33-1 at 10–11, 14–15.  They argue that they complained to the Board's acting director of human resources, who "wasted [their] time" while trying "to resolve the conflict" by meeting with them individually and, at some point, offering monetary settlements to the plaintiffs if they retired.  *Id.* at 10–11.  This delay, Plaintiffs argue, excuses their failure timely to exhaust their disparate treatment and hostile work environment claims.  With respect to their disparate impact claims, Plaintiffs offer no justification for their failure to exhaust administrative remedies.  *See* Dkt. 33-1 at 11–15.

ADEA and Title VII deadlines are subject to equitable tolling in limited circumstances. *See Zipes,* 455 U.S. at 393; *Bowden*, 106 F.3d at 437.  "Extension of equitable tolling," however, "is not automatic by any means, for the government enjoys sovereign immunity, and waivers of such immunity are narrowly read."  *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1055 (D.C. Cir. 1988).  The Supreme Court has suggested that equitable tolling might be available where a claimant received inadequate notice, where a motion for appointment of counsel was pending, "where the court [or agency] has led the plaintiff to believe that she had done everything required of her," or "where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction."  *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (per curiam).  Courts are "much less forgiving," however, "where the claimant failed to exercise due

diligence in preserving his legal rights." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Notably, although Plaintiffs cite to case law supporting the threshold principle that equitable tolling is available in Title VII and ADEA cases, they do not identify any precedent that supports application of the doctrine in circumstances similar to their own. The sole argument that they make is that the Board's director of human resources "wasted [their] time." *See* Dkt. 33-1 at 10–11, 14–15. They do not contend that they were provided misinformation regarding the exhaustion requirements, that they were waiting for counsel to appear on their behalf, that they were misled in any way, or that they were "lulled . . . into inaction" based on "misconduct" by the Board. Plaintiffs were, to the contrary, represented by counsel throughout the administrative process. The Board, moreover, informed Plaintiffs' counsel on May 8, 2012—within the time that Plaintiffs could have timely exhausted the claims described in their April 2012 statements—that "the Office of Human Resources is not the appropriate place to file a discrimination complaint," and that they should, instead, "file [their] documentation with the Agency's Office of Civil Rights." Dkt. 38-1 at 1. In addition, the Board has submitted evidence that it displayed posters in the VOA offices informing employees that they must contact an EEO counselor within 45 days of a discriminatory act, and these posters included the relevant phone number. *See* Dkt. 38-4.

This case, accordingly, is analogous to *Baldwin County*, 466 U.S. at 151, where the claimant was told "what she must to do preserve her claim, and she did not do it." Equitable tolling is a narrow exception, applied only in limited circumstances where fundamental fairness requires it. Here, Plaintiffs have not shown that they exercised due diligence in pursuing their administrative remedies. To the extent that they are still subject to ongoing discrimination,

moreover—as they contend—they are not without remedies.  They may return to the Board's office of civil rights and exhaust whatever claims they may have.  If they do so and they remain unsatisfied with the result of that process, they may return to court and file suit based on those claims that they have properly exhausted.  For now, however, they have not met the necessary preconditions for bringing this action.

Because the Achagzai Plaintiffs failed timely to exhaust their administrative remedies, the Court grants the Board's motion for summary judgment on all counts as to Achagzai, Shah, Mohmand, and Khadem.

**B.  Plaintiff Stanazai**

1. *Administrative Exhaustion*

Plaintiff Stanazai's claims arise in a different posture than those of his four co-plaintiffs. Stanazai first contacted an EEO counselor on March 22, 2013.  Dkt. 30 at 4.  He later filed a formal complaint on April 24, 2013, *see id.*, and attached to that complaint a description of the Board's allegedly discriminatory and retaliatory conduct, *see* Dkt. 30-2 at 108–41.  Although that document is undated, the majority of the alleged events described in it occurred well before February 5, 2013—the 45-day cutoff before March 22, 2013.  With respect to those allegations, Stanazai failed timely to exhaust any claim based on a discrete act of discrimination or retaliation.  *See Morgan*, 536 U.S. at 113.  He can only rely on those allegations to support a claim of hostile work environment, moreover, if the alleged chain of hostile acts continued on or after February 5, 2013, and Stanazai timely exhausted administrative remedies with respect to at least one act in the chain.  *See id.* at 117.

Stanazai's statement does, however, include two incidents that allegedly occurred within 45 days of his March 22, 2013, EEO counseling.  First, he alleges that his supervisors changed

his schedule effective February 25, 2013, assigning him more difficult tasks and promoting

other, less qualified staffers to supervisory roles based on Stanazai's age or national origin.  *See*

Dkt. 30-2 at 114, 118, 125, 131, 136.  Second, he received an allegedly hostile email after asking

for more time to complete an assignment on February 5, 2013.  *Id.* at 117–18, 130.  It appears,

moreover, that Stanazai's counsel raised these issues with the EEO counselor, *see* Dkt. 30-2 at

104 (EEO counselor's report, noting Stanazai's objection to schedule change and "false and

accusatory emails from his supervisor"), and the Board has neither argued nor shown that these

issues were raised later than the date on which Stanazai initiated the counseling process.  For

purposes of the present motion, the Court accordingly concludes that both the February 25, 2013,

schedule change and the February 5, 2013, email were timely raised, and that claims based on

those allegations were timely exhausted.[3]

The next question is whether Stanazai has stated a claim upon which relief may be

granted based on those allegations.  The Court will consider each of Stanazai's claim in turn.

2. *Disparate Treatment*

The first two counts of the complaint allege that the Board intentionally discriminated

against Stanazai in violation of Title VII (Count 1) and the ADEA (Count 2).  In considering

whether these claims can survive the Board's motion to dismiss, or, in the alternative, for

---

[3]  The Board argues that Stanazai did not exhaust his remedies as to the first two counts of his complaint, which allege intentional discrimination, because "he did not identify any conduct that occurred within 45 days of his filing of the EEO complaint and that could constitute an adverse employment action sufficient to support" an intentional discrimination claim.  Dkt. 30 at 16. Stanazai's statement, however, references the February 25, 2013, schedule change as an example of intentional discrimination.  *See* Dkt. 30-2 at 114.  Whether that schedule change constitutes an adverse employment action, moreover, is a question that goes to the merits of his claim and has no bearing on whether he timely exhausted his administrative remedies with respect to that claim.

summary judgment, Dkt. 30, the Court applies the familiar test from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See, e.g.*, *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1353 (2015).  Under this test, "[a] plaintiff makes out a *prima facie* case of disparate-treatment discrimination by establishing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  *George v. Leavitt,* 407 F.3d 405, 412 (D.C. Cir. 2005) (internal citations omitted).  Once the plaintiff establishes his *prima facie* case, the burden shifts to his employer "to articulate some legitimate, nondiscriminatory reason" for the adverse employee action.  *McDonnell Douglas*, 411 U.S. at 802.  The plaintiff then has an opportunity to show that the proffered reason was merely pretext for discrimination.  *Id.* at 804.  This same framework applies to ADEA discrimination claims.  *See Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999).

The Board argues that Stanazai's claims of intentional discrimination fail as a matter of law because he has not alleged or shown that he suffered an adverse employment action.  Dkt. 30 at 11.  "[A]n adverse employment action [is] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (internal quotation marks and emphasis omitted).  The allegations contained in the complaint must be sufficient to allow a reasonable trier of fact to find an objective, tangible harm—subjective injuries are not enough.  *Id*. at 552–53.  Although many workplace incidents may be upsetting to an employee, "not everything that makes an employee unhappy is an actionable adverse action."  *Id.* at 552 (internal quotation marks omitted).

The Board argues that Stanazai's disparate treatment claims fail because he has not shown that he was removed from his position, given a lower grade resulting in less pay, or stripped of supervisory duties.  Dkt. 30 at 11.  The Board also contends that any reduction or change in duties resulting from the schedule changes was only temporary and that any loss of duties did not adversely affected Stanazai's employment in a tangible manner.  *Id.* at 12. Stanazai, in turn, responds that he has "put forth sufficient evidence regarding the changes in assignments, schedules, and being replaced by younger and less experienced staff, from which a reasonable jury could infer that the real reason for constant changes in the schedule was unlawful discrimination."  Dkt. 33-1 at 7–8.  Stanazai's administrative complaint alleges that these "junior" employees were given supervisory positions despite a lack of qualifications while seniors were passed over, Dkt. 30-2 at 114, and the complaint reiterates that accusation, Compl. ¶ 107.

The Court concludes that the Board has not carried its burden of demonstrating that it is entitled to prevail as a matter of law on Stanazai's disparate treatment claims.  Standing alone, it is unlikely that the purportedly "false and accusatory e-mails," Dkt. 30-2 at 104, constitute an adverse employment action.  As the D.C. Circuit has repeatedly observed, "a thick body of precedent . . . refutes the notion that formal criticism or poor performance evaluations are necessarily adverse actions."  *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001) (internal quotation marks omitted) (alteration in original); *see also Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003); *Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008).  Criticisms and poor evaluations may constitute an adverse employment action only when they result in a tangible consequence, such as a demotion, loss of a bonus, or missed opportunity for advancement.

Here, however, Stanazai alleges more.  He contends that assignments were made within VOA based, at least in part, on age and nationality and that "junior staff members [were] given plum assignments, travel, leeway with their schedules, and put into managerial positions while the seniors [were] marginalized or reduced to a simple translator or producer."  Compl. ¶ 106. With respect to Stanazai specifically, the complaint alleges that junior employees were assigned to "supervisory positions," while Stanazai, although more qualified, was "demoted to production or reduced to a simple translator."  *Id.* ¶ 107.  These allegations lack detail, but they are sufficient for present purposes to state a claim upon which relief may be granted.  As the D.C. Circuit has held, "we have no doubt that the removal of [an employee's] supervisory responsibilities constitute[s] adverse employment action."  *Burke v. Gould*, 286 F.3d 513, 522 (D.C. Cir. 2002); *see also Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007).  Likewise, a decision to select one employee for a position instead of another who is "significantly better qualified for the job" can give rise to a claim for discrimination.  *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998).  Stanazai alleges both that he was demoted from a supervisory position and that, when the new schedule issued, less qualified employees were given supervisory authority. That is sufficient to state a claim.

That does not resolve the question, however, since the Board has moved, in the alternative, for summary judgment.  For summary judgment purposes, however, the Board bears the burden of showing—at least in the first instance—that the undisputed facts entitle it to relief as a matter of law, *see* Fed. R. Civ. P. 56(a), and it has failed to carry this burden.  The Board has not submitted any evidence refuting Stanazai's allegation that he was demoted from a supervisory position and that less qualified employees were given supervisory authority at his expense.  Nor has it offered a legitimate, nondiscriminatory reason for its actions.  The Board

may eventually be able to make such a showing, but it has yet to do so.  The Court, accordingly, concludes that the Board's motion to dismiss or, in the alternative, for summary judgment, Dkt. 30, must be denied with respect to Stanazai's disparate treatment claims.

2.  *Disparate Impact*

The third and fourth counts of the complaint allege disparate impact discrimination under Title VII and the ADEA, respectively.  *See* Compl. at 32–34.  The Supreme Court has recognized that a disparate impact theory of recovery is available under both Title VII, *see Griggs v. Duke Power Co.*, 401 U.S. 424, 436 (1971), and, albeit less expansively, the ADEA, *see Smith v. City of Jackson*, 544 U.S. 228, 239–40 (2005).  In contrast to a disparate treatment claim, "a disparate impact claim challenges practices that have a "disproportionately adverse effect on minorities" and that are not "otherwise []justified by a legitimate rationale."  *Texas Dept. of Housing & Community Affairs v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507, 2513 (2015) (internal quotation marks omitted).  Stanazai's disparate impact claim fails for two reasons.

First, the essence of a disparate impact claim is that a particular employment practice, or, in the case of Title VII, a decisionmaking process that is "not capable of separation for analysis," has disproportionately affected a protected class.  42 U.S.C. § 2000e-2(k)(1)(B)(i).  Here, however, Stanazai does not allege facts that, even if accepted as true, state a "plausible" claim for relief on a disparate impact theory.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  His contention is not that a facially non-discriminatory practice or process has led to a statistically significant disparate impact but rather that the Board's management intentionally discriminated against him and other older employees of Afghani

descent in a series of separate actions involving assignments, training, and criticism.  That is not a disparate impact claim.

Second, even if Stanazai might now attempt to allege a claim premised on a disparate impact theory, he did not timely exhaust administrative remedies with respect to that theory.  The only events he referenced in the disparate impact section of his administrative complaint concerned events that occurred in 2012, more than 45 days before he first sought EEO counseling.  Dkt. 30-2 at 137.  Accordingly, he failed to timely exhaust his administrative remedies with respect to his disparate impact claims.

The Court therefore grants the Board's motion to dismiss, or, in the alternative, for summary judgment as to Stanazai's third and fourth claims.

3.  *Hostile Work Environment*

The fifth count of the complaint alleges a hostile work environment in violation of both Title VII and the ADEA.  Compl. at 34.  The sixth count, in turn, alleges "systemic harassment." *See id.* at 38.  The paragraphs contained within that count allege harassment and a hostile work environment, as do the paragraphs contained in the fifth count, and the Court is unaware of a distinct cause of action of "systemic harassment."  Moreover, even though the Board raised this ambiguity in its motion, Stanazai's response makes no effort to clarify the issue.  *See* Dkt. 30 at 19; Dkt. 33-1.  The Court will therefore treat the fifth and sixth counts as one and the same.

The bar for demonstrating a hostile work environment is a high one: "[A] plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Baloch*, 550 F.3d at 1191, 1201 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).  This standard prevents Title VII from "becom[ing] a general

civility code" and "filter[s] out complaints attacking the ordinary tribulations of the workplace."

*Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted).

"Even a few isolated incidents of offensive conduct do not amount to actionable harassment."

*Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).  "Assuming that a hostile work

environment claim can be brought under the ADEA, the same standard would apply."  *Ware v.*

*Hyatt Corp.*, 80 F. Supp. 3d 218, 227 (D.D.C. 2015).

For present purposes, all that remains at issue are Stanazai's claims, and thus the

allegations that his co-plaintiffs raised cannot support these claims.  Stanazai's allegations fall

into four categories: that he was assigned a role as "simple translator," without supervisory

responsibility, Compl. ¶ 107; that he was assigned to do the news five days a week, which was a

difficult task, *id.* ¶ 92; that he received emails from his supervisor that were critical of him, *id.*

¶ 20; and that his complaints to various VOA managers and supervisors went unheeded, *id.*

¶¶ 28–32, 34–36.  None of this, however, rises to the level required to state a claim for a hostile

work environment.

"To determine whether a hostile work environment exists, the court looks to the totality

of the circumstances, including the frequency of the discriminatory conduct, its severity, its

offensiveness, and whether it interferes with an employee's work performance."  *Baloch*, 550

F.3d at 1201.  The "conduct must be extreme," and must be "both objectively and subjectively

offensive, one that a reasonable person would find hostile or abusive, and one that the victim in

fact did perceive to be so."  *Faragher*, 524 U.S. at 787–88.

The facts that Stanazai alleges are not sufficiently severe or pervasive enough to allege a

claim of a hostile work environment.  Although one can imagine emails that might reflect such

grave animus or hostility that they support a claim for a hostile work environment, Stanazai does

not identify any such statement contained in an email that he received from his employer.  His

conclusory assertions that the emails were "harassing," Compl. ¶ 20, do not satisfy the pleading

requirements established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Iqbal*,

556 U.S. at 678.  Similarly, the failure of VOA management to act upon Stanazai's complaints

adds little to his claim.  Most of those allegations do not even contend that Stanazai complained

about discriminatory conduct directed at him; instead, they allege that he complained generically

about discrimination in hiring at VOA, about discrimination directed at the "seniors,"  and about

favoritism directed shown to the "junior employees."  Compl. ¶¶ 20–22.  Again, management's

alleged failure to correct injustices that Stanazai perceived, does not, standing alone, rise to the

extreme level required to allege a hostile work environment.

    This leaves Stanazai's claims that he was both given too much responsibility—

broadcasting the news five times week—and not enough—merely translating broadcasts for

others.  Compl. ¶¶ 92, 107.  As noted above, to the extent that Stanazai was demoted from a

supervisory position, or denied one, based on his age or nationality, he may pursue a claim for

intentional discrimination based on that conduct.  But not every claim of workplace

discrimination that can survive a motion to dismiss also states a claim for a hostile work

environment.  To survive a motion to dismiss a hostile work environment claim, a plaintiff must

allege "severe" or "pervasive" acts that poison the workplace and, as a result, alter the conditions

of employment.  Here, Stanazai has alleged, at most, that the schedule was changed three or four

times over the course of approximately four years in a manner that promoted less qualified,

junior employees to attractive positions, while depriving him of those roles.  These incidents,

while upsetting to Stanazai and perhaps independently actionable, do not amount to the sort of

"severe or pervasive," hostile and abusive conduct necessary to state a claim for a hostile work environment. *Harris*, at 510 U.S. at 21 (internal quotation marks omitted).

### 4. *Willful Discrimination*

The seventh count in the complaint alleges "Willful Discrimination" in violation of both Title VII and ADEA. Compl. at 39. The Board argues that this claim is merely repetitive of Stanazai's first two counts, alleging intentional discrimination. Dkt. 30 at 23. Stanazai does not respond to this argument at all in his opposition. *See* Dkt. 33-1. Perhaps Stanazai means to allege that the Board willfully violated the ADEA, which may entitle him to liquidated damages. *See* 29 U.S.C. § 626(b). That provision of the ADEA, however, does not create a distinct cause of action but merely authorizes an additional form of relief upon a sufficient showing. Because the Court can discern no separate cause of action for "willful discrimination," and because Stanazai failed to respond to the Board's argument regarding this claim, the Court will grant Defendant's motion to dismiss count seven of the complaint.

### 5. *Retaliation*

Finally, the eighth and ninth counts of the complaint allege unlawful retaliation in violation of Title VII and the ADEA, respectively. Compl. at 40–46. Title VII prohibits an employer from "discriminat[ing] against any of [its] employees . . . because he has made a charge . . . or participated in any manner in an investigation" of discrimination. 42 U.S.C. § 2000e–3(a). The ADEA contains an identical prohibition. 29 U.S.C. § 623(d). To prevail on a claim of unlawful retaliation under either statute, a plaintiff must start by making a *prima facie* showing that: (1) he engaged in activity protected by the relevant statute; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse action. *See Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (applying the

test in a Title VII case); *Passer v. Am. Chem. Soc.*, 935 F.2d 322, 331 (D.C. Cir. 1991) (applying

the test in an ADEA case).  In retaliation cases, however, "the adverse action concept has a

broader meaning" than in discrimination cases.  *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C.

Cir. 2011) (internal quotation marks omitted).  "[A]ctions giving rise to [retaliation] claims are

'not limited to discriminatory actions that affect the terms and conditions of employment,' but

reach any harm that 'well might have dissuaded a reasonable worker from making or supporting

a charge of discrimination.'"  *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S.

53, 64 (2006)).

Here, the Board concedes that Stanazai engaged in protected activity by complaining

about allegedly discriminatory hiring practices in August 2012.  *See* Dkt. 30 at 25 (describing

that action as "conduct which would constitute protected conduct under" Title VII).  And the

Board recognizes that Stanazai properly exhausted any claim with regard to the February 25,

2013, scheduling change.  *Id.*  The Board contends, however, that Plaintiffs (including Stanazai)

have relied upon only "trivial" acts that are too "vague" to give rise to an adverse employment

action.  *Id.* at 26.  As the Court has already explained, however, a schedule that places some

employees in a supervisory role instead of others is sufficiently adverse to sustain even an

intentional discrimination claim.  *See Czekalski*, 475 F.3d at 364.  The Court thus concludes that

Stanazai has also alleged facts that amount to an "adverse employment action" under the

"broader" understanding of the term in the retaliation context.  Stanazai's claims that the

February 25, 2013, scheduling changes constituted unlawful retaliation for repeated complaints

about discrimination at the VOA may thus proceed, and the Board's motion to dismiss or, in the

alternative, for summary judgment, with respect to that claim is accordingly denied.

### III.  CONCLUSION

For the reasons discussed above, the Board's motion for summary judgment under Fed.

R. Civ. P. 56 is **GRANTED** as to Plaintiffs Achagzai, Mohmand, Shah, and Khadem.  The

Board's motion for to dismiss or, in the alternative, for summary judgment is **GRANTED** as to

counts III, IV, V, VI, and VII of Plaintiff Stanazai's complaint.  The motion is **DENIED** as to

counts I, II, VIII, and IX of his complaint, insofar as they allege that the Board discriminated or

retaliated against Stanazai by either demoting him or promoting other VOA employees in his

stead based on considerations of age or nationality.

        **SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 18, 2016